# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
August 16, 2011 Session

## 411 PARTNERSHIP, v. KNOX COUNTY, TENNESSEE, et al.

**Appeal from the Circuit Court for Knox County**
**No. 2-26-10      Hon. Harold Wimberly, Judge**

**No. E2010-02390-COA-R3-CV-FILED-NOVEMBER 16, 2011**

The Knox County Board of Zoning Appeals denied plaintiff's use on review application for a proposed shopping center. Plaintiff appealed the decision to the Circuit Court by way of a Writ of Certiorari. The Trial Court upheld the Board of Zoning Appeals' decision and plaintiff appealed to this Court. We reverse the decision of the Circuit Court on the grounds the record before the Board of Zoning Appeals does not contain substantial material evidence to uphold the Board's ruling. We reverse the Judgment of the Trial Court and remand.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the Court, in which D. MICHAEL SWINEY, J., and JOHN W. MCCLARTY, J., joined.

Arthur G. Seymour, Jr., and Benjamin C. Mullins, Knoxville, Tennessee, for the appellant, 411 Partnership.

Daniel A. Sanders, Deputy Knox Law Director, Knoxville, Tennessee, for the appellees, Knox County, Tennessee, and the Knox County Board of Zoning Appeals.

## OPINION

This is an appeal of the Knox County Board of Zoning Appeal's (BZA) decision to deny plaintiff/appellant's use on review application for a proposed shopping center

development. 411 Partnership appealed the BZA's decision to the Circuit Court for Knox County, by a Writ of Certiorari and Complaint for Declaratory Judgment. 411 Partnership contended that the BZA record was devoid of evidence to justify the denial of the use-on review or to support justification that the development was not reasonably necessary.

The Trial Court held a hearing and entered a judgment affirming the BZA's decision and dismissing 411 Partnership's Petition for Writ of Certiorari and Complaint for Declaratory Judgment. The Circuit Court incorporated its Memorandum Opinion in the Final Judgment, wherein the Circuit Court stated that since this matter was before it pursuant to a Writ of Certiorari it was not the purpose of the Court to weigh the evidence but, rather, to determine if there was evidence presented to the BZA that would support the BZA's denial of 411 Partnership's use on review application. The Court found that while there was "stronger evidence in favor of . . . [411 Partnership] here, the evidence opposed to it still exists, so that the BZA . . . could appropriately have found against the project." 411 Partnership has appealed to this Court.

The subject property of approximately twelve acres is located in Knoxville, Tennessee on the south side of Norris Freeway and west of Maynardville Pike. The property is zoned SC (Shopping Center), A (Agricultural), and F (Floodway). Crossroads Center, a shopping center anchored by Wal-Mart and Ingle's, is across Norris Freeway to the north of the subject property. Land west of the subject property has been designated to be developed as a park, to be known as Halls Park and Greenway. The subject property is divided by Beaver Creek, which runs through the southeast portion of the property. The Knox County Commission had approved the rezoning of approximately 4.2 acres of the subject property to SC in April, 2006.

In early 2005, 411 Partnership began planning to develop a shopping center on the subject property. In 2008 plaintiff purchased the subject property and initially sought the approval of the Knoxville-Knox County Metropolitan Planning Commission (MPC) for a use-on-review to construct a retail shopping center of approximately 31,000 square feet in the area of the property designated as SC. The MPC staff and the Knox County Department of Engineering and Public Works reviewed the proposal and recommended it for approval subject to seventeen conditions. MPC approved the use-on-review at its August, 2008 meeting. The MPC decision was appealed to the BZA by opponents of the development. The appeal was granted and at its September, 2008 meeting, BZA overturned the MPC's decision to grant use on review approval. Plaintiff appealed the BZA's decision to the Chancery Court by Petition of Certiorari, and the Chancellor upheld the BZA's decision to deny use on review.

Following the Chancery Court's affirmation of the BZA decision, plaintiff returned

to the MPC where it submitted a new application for essentially the same development with the hopes of creating a more complete record and providing additional information that addressed the issues that had been raised regarding the development. 411 Partnership's second application was approved by the MPC staff subject to thirteen conditions. The MPC, however, denied the use on review application at its November 2009 meeting. 411 Partnership appealed the MPC's decision to the BZA. The BZA considered the appeal at its December 2009 meeting and heard extensive presentations by both one of the principals of 411 Partnership and those in opposition to the development.

Nathan Silvus, one of the owners of the 411 Partnership development and the project engineer for the development, spoke at length at the BZA hearing. He explained that as part of the development of the twelve acres owned by 411 Partnership, the developers planned to offer the Halls Park and Greenway, which adjoined 411's property, a five and a half acre conservation area to expand the park and to construct a mitigation wetland on the site. He explained that the wetland would capture and filter water from 411's site as well as water from the much larger shopping center across the street. He noted that the Knox County Storm Water Ordinance requires that a commercial site remove at least eighty percent of the total suspended solids from runoff but that in the case of his project, they would be removing a higher percentage of the total suspended solids. He stated that the waters of Beaver Creek, which runs through the proposed development, will be cleaner after the project is completed than they are now. Additionally, the total pollution load in Beaver Creek will be lower after the project is constructed than at the present. He summarized that there will also be more wetlands, not less, better water quality, not worse and lower pollutants, not higher. He also stated that the project would not adversely impact Beaver Creek. He noted that in response to earlier opposition to the 411 project, they had modified the project to decrease the layout of the shopping center by thirty percent of leaseable space and had added a comprehensive outdoor dining and landscaping plan to enhance the use of the adjacent park. In response to the concerns of some opponents of the shopping center over increased flooding in the area, Mr. Silvus stated that his project would reduce the one hundred year flood plain by nearly two feet. In support of Mr. Silvus' testimony regarding the 411 Partnership project, plaintiff presented as exhibits its Flood Study Plan and a Wetland Mitigation Plan prepared by a geologist.

Opponents of the 411 Partnership project and supporters of the planned Halls Park and Greenway adjacent to the property also spoke at the hearing. One of the opponents to the project, Wilma Jordan, was represented at the hearing by attorney John King. Mr. King pointed to the North County Sector Plan that provided for the "protection of the water quality of Beaver Creek . . . by minimizing impervious surfaces and preserving vegetation along all creek corridors to reduce surface runoff." He stated that the 411 Partnership project would require extensive fill above Beaver Creek and would create four acres of impervious surface

on property within the flood plane. He presented photographs of existing flooding in the area near the proposed project. Mr. King estimated that the amount of fill proposed by the developer's plans would leave portions of the property "some ten to fourteen feet higher than the adjoining property with no connectivity to the park. He also stated that the 411 Partnership project is adjacent to residential property and a community park and that the substantial fill included in the project's plans would result in topographical changes within the Beaver Creek flood plain that would exacerbate flooding of those adjacent properties. Mr. King also noted that the North County Sector Plan referred to the subject area as "saturated" with shopping centers that exceeded what the population could support.

Marvin Hammond, the president emeritus of the Hallsdale-Powell Utility District, stated that he had been a utility operator for forty-five years and a conservationist who had devoted his life to the protection of wetlands and to water shed issues. He stated that the 411 Partnership's proposal would cause degradation of Beaver Creek, which was already impaired. He stated that the impairment had occurred over a long period of time and at the present time the fish from the creek could not be eaten nor could the creek be waded in. Mr. Hammond argued that he knew from forty-five years of experience that engineers can make mistakes in their plans and that "we can't afford to have mistakes made" with Beaver Creek.

In addition to the testimony of Mr. Hammond and the presentation made by Mr. King, seven homeowners who lived in the immediate area of the proposed development stated their opposition to the project based on their concerns about the exacerbation of the already existing flood problems in the neighborhood. These homeowners also stated they were not against the development per se, but were concerned about property values, damage to property and unsafe conditions caused by increased flooding.

At the conclusion of the testimony from the proponents and opponents of the 411 Partnership project, BZA Chairman William Daniels made several comments. He stated that he has a good understanding of hydrology and that, in his experience, engineers can and do make mistakes. He noted that if 411's engineers' designs fail and the neighborhood floods, it will be the County and the insurers of the individually owned properties who will be responsible for taking care of the problem and not Mr. Silvus or his engineers. He stated that "when you throw a brick in a bucket of water, that water's got to go somewhere . . ." Chairman Daniels went on to express scepticism regarding Mr. Silvus's testimony on the issues of flood control and storm water runoff. A motion was made to deny 411 Partnerships appeal, which was passed unanimously by the BZA. No reasons for this decision were stated.

The issue raised on appeal is:

Whether the record before the Knox County Board of Zoning Appeals contains any evidence of a material or substantial nature from which the Board could have denied 411 Partnership's use on review application?

An action by a board of zoning appeals is an administrative or quasi-judicial act rather than a legislative act. *McCallen v. City of Memphis*, 786 S.W. 2d 633, 638 - 639 (Tenn. 1990). The proper method of judicial review of an action of a board of zoning is through the common law writ of certiorari. Tenn. Code Ann. § 27-9-101 et seq.; *McCallen* at 639. The Middle Section of this Court, in *State ex rel. Moore & Associates, Inc. v. West.*, 246 S.W.3d 569 (Tenn. Ct. App. 2005), explained that "the primary consequence of a determination that a party must seek judicial review through the common law writ of certiorari procedure is that the trial court must apply a limited standard of review to decisions already made by administrative officials, rather than address the issue *de novo* as the initial decision maker." *Moore* at 574. The *Moore* court explained this limited standard of review as follows:

Under the limited standard of review in common law of writ of certiorari proceedings, courts review a lower tribunal's decision only to determine whether that decision maker exceeded its jurisdiction, followed an unlawful procedure, acted illegally, arbitrarily, or fraudulently, or acted without material evidence to support its decision. *Petition of Gant,* 937 S.W.2d 842, 844–45 (Tenn.1996), *quoting McCallen v. City of Memphis,* 786 S.W.2d 633, 638 (Tenn.1990); *Fallin v. Knox County Bd. of Com'rs,* 656 S.W.2d 338, 342–43 (Tenn.1983); *Hoover Motor Exp. Co. v. Railroad & Pub. Util. Comm'n.,* 195 Tenn. 593, 604, 261 S.W.2d 233, 238 (1953); *Lafferty v. City of Winchester,* 46 S.W.3d 752, 758–59 (Tenn. Ct. App.2001); *Hoover, Inc. v. Metropolitan Bd. of Zoning Appeals,* 955 S.W.2d 52, 54 (Tenn. Ct. App.1997); *Hemontolor v. Wilson Co. Bd. of Zoning Appeals,* 883 S.W.2d 613, 616 (Tenn. Ct. App.1994).

Under the certiorari standard, courts may not (1) inquire into the intrinsic correctness of the lower tribunal's decision, *Arnold v. Tennessee Bd. of Paroles,* 956 S.W.2d 478, 480 (Tenn.1997); *Powell v. Parole Eligibility Rev. Bd.,* 879 S.W.2d 871, 873 (Tenn. Ct. App.1994); (2) reweigh the evidence, *Watts v. Civil Serv. Bd. for Colum.,* 606 S.W.2d 274, 277 (Tenn.1980); *Hoover, Inc. v. Metro Bd. of Zoning App.,* 924 S.W.2d 900, 904 (Tenn. Ct. App.1996); or (3) substitute their judgment for that of the lower tribunal. *421 Corp. v. Metropolitan Gov't of Nashville,* 36 S.W.3d 469, 474 (Tenn. Ct. App.2000). It bears repeating that common law writ of certiorari is simply not a vehicle which allows the courts to consider the intrinsic correctness of the conclusions of the administrative decision maker. *Powell,* 879 S.W.2d at 873; *Yokley v. State,* 632 S.W.2d 123, 126 (Tenn. Ct. App.1981).

Further, especially where zoning decisions by local officials are involved, the common law writ of certiorari, being a supervisory writ, somewhat limits the remedies courts employ when there has been error. *421 Corporation,* 36 S.W.3d at 474; *Hoover, Inc.,* 955 S.W.2d at 55. Remand is most commonly used, because courts should give local zoning officials the opportunity to perform their duties appropriately rather than substituting the courts' own judgments for those of the zoning officials. *421 Corporation,* 36 S.W.3d at 475; *Hoover, Inc.,* 955 S.W.2d at 55.

In fact, one principle that infuses the approach of Tennessee courts to judicial review of local land use decisions, whether those decisions are legislative or administrative in nature, is that "the court's primary resolve is to refrain from substituting its judgment for that of the local governmental body." *McCallen,* 786 S.W.2d at 641. There exists a public and judicial policy that favors permitting the community decision-makers closest to the events, who have been given broad powers in the area, to make zoning and land use decisions. Consequently, courts give wide latitude to local officials who are responsible for implementing zoning ordinances, are hesitant to interfere with zoning decisions, and will refrain from substituting their judgments for that of the local governmental officials. *Lafferty,* 46 S.W.3d at 758; *Hoover, Inc.,* 955 S.W.2d at 54; *Whittemore v. Brentwood Planning Comm'n.,* 835 S.W.2d 11, 15 (Tenn. Ct. App.1992).

*Moore* at 574 - 575.

Here, this Court's task is to determine whether the BZA's decision to deny 411 Partnership's appeal was supported by sufficient substantial evidence. We are not permitted, however, to inquire into the intrinsic correctness of the BZA's decision, reweigh the evidence or substitute our judgment for that of the BZA. The question of whether there is sufficient evidence to sustain a zoning action is a question of law, thus appellate review is *de novo* without a presumption of correctness. *Wilson County Youth Emergency Shelter, Inc. v. Wilson County*, 13 S.W.3d 338, 342 (Tenn. Ct. App. 1999)(citing *MC Properties, Inc. v. City of Chattanooga,* 994 S.W.2d 132, 134 (Tenn.App.1999)).

As a preliminary issue, we note that although both appellant and appellee rely on the Knox County Zoning Ordinances to support their arguments, neither party put the relied upon ordinances into the record at the proceedings below or at the BZA zoning proceeding. Prior to the enactment of the Tennessee Code of Evidence on January 1, 1990 the law in Tennessee was that courts could not take judicial notice of municipal ordinances because the ordinances were not readily available to the courts and could be amended at frequent intervals. In cases involving such ordinances it was necessary for the parties to stipulate the existence and the accurate texts of ordinances or else to prove the same through municipal officials or by

supplying certified copies in accordance with the Tennessee Rules of Civil Procedure. *Metro. Gov't of Nashville & Davidson County v. Shacklett*, 554 S.W.2d 601, 605 (Tenn. 1977). On January 1, 1990, the Tennessee Rules of Evidence was enacted and Tenn. R. Evid. 202 provides for judicial notice of law. Rule 202(a) requires the courts to take mandatory judicial notice of certain laws, including "the constitutions and statutes of the United States and of every state, territory and other jurisdictions of the United States." Rule 202(b) provides that courts may also take, at their option, judicial notice of other rules, laws, ordinances and treaties. The Rule 202(b) states:

> Optional Judicial Notice of Law. **Upon reasonable notice to adverse parties, a party may request that the court take, and the court may take, judicial notice of** (1) all other duly adopted federal and state rules of court, (2) all duly published regulations of federal and state agencies and proclamations of the Tennessee Wildlife Resources Agency, **(3) all duly enacted ordinances of municipalities or other governmental subdivisions**, (4) any matter of law which would fall within the scope of this subsection or subsection (a) of this rule but for the fact that it has been replaced, superseded, or otherwise rendered no longer in force, and (5) treaties, conventions, the laws of foreign countries, international law, and maritime law.

Tenn. R. Evid. 202(b)(emphasis added).

During the certiorari proceeding at the Trial Court neither the BZA nor 411 Partnership informed the other party that it intended to rely on any of the Knox County Zoning Ordinances, nor did either party request that the Trial Court take judicial notice of any ordinance or submit a copy of that ordinance to the Trial Court. Nor is there an authenticated copy of the ordinances relied upon on appeal in this appellate record. Accordingly, the parties did not comply with Rule 202 (b) and this Court will not take judicial notice of the ordinances cited in the parties' briefs. Moreover, the ordinances relied on in the parties' appellate briefs were not included in the record of the BZA proceeding, and review under the common law writ of certiorari is generally limited to the record made before the lower tribunal or board, and as the ordinances are not included in the BZA record, it is inappropriate to consider them. *See* 27–9–111(b); *Kittrell v. Wilson County*, M2010-00792-COA-R3CV, 2011 WL 3339132 at * 5(Tenn. Ct. App. Aug. 3, 2011)(citing *421 Corp. v. Metro. Gov't of Nashville & Davidson County,* 36 S.W.3d 469, 474 (Tenn. Ct. App. 2000)).

411 Partnership contends that the record lacks substantial material evidence to support a denial of the use on review and that 411 presents sufficient substantial evidence to support the use on review. To support this contention, 411 Partnership points to the detailed Flood Study Plan it prepared with a licensed engineer and the Wetland Mitigation Plan and Permit

Application it had prepared by a group of professional geologists. 411 Partnership contends that the Flood Study Plan, which was approved by the Knox County Department of Engineering and Public Works before it was presented to the MPC and later the BZA, shows that the project would not increase the flooding and that the development would actually reduce the 100-year flood plain elevation by two feet. 411 also contends that its Wetland Mitigation Plan shows that its proposed development would actually create additional wetlands on the site and that the additional wetlands would be of a higher quality than actually exists, causing an improvement in the water quality and functionality of Beaver Creek, which has been classified as an impaired stream. In addition to the documents prepared and presented by 411 Partnership, one of the principals of 411, Nathan Silvus, a project engineer, explained the studies.

On the other hand, 411 Partnership contends that the testimony presented by the opponents to its development was based on their fears that the pre-existing flood conditions in the neighborhood might get worse because of the proposed development. 411 Partnership points to the testimony of several people who live in the neighborhood of the proposed development who testified to the current flooding situation in that neighborhood. These individuals testified that they believed that the development would make the flooding worse, although none of the neighbors pointed to facts to back up their fears.

In addition to the neighbors' testimony, the opponents to the project presented the arguments of attorney John King, on behalf of a neighboring landowner, who showed that the North County Sector Plan provided for the "protection of the water quality of Beaver Creek . . . by minimizing impervious surfaces and preserving vegetation along all creek corridors to reduce surface runoff." He argued that the project would require extensive fill above Beaver Creek and would create four acres of impervious surface on property within the flood plane and cause topographical changes within the Beaver Creek flood plain that would exacerbate flooding of those adjacent properties. King also relied on the North County Sector Plan to argue that the area was "saturated" with shopping centers that exceeded what the population could support. King did not present himself as an expert in the areas of engineering, hydrology or urban planning.

Marvin Hammond, the president emeritus of the Hallsdale-Powell Utility District, also testified on behalf of the opponents to the project. He did not provide any information regarding his education or describe his areas of expertise related to his former position as president of the utility district. His testimony was that it was his opinion that the proposed development would cause degradation of Beaver Creek, which was already impaired. Mr. Hammond made the argument that he knew from forty-five years of experience that engineers can make mistakes in their plans and that "we can't afford to have mistakes made" with Beaver Creek.

411 Partnership contends that although all of the opponents to the project who testified believed the development would make flooding worse, none of them provided a factual basis as to why they disagreed with the engineering plans and calculations that showed that the grading and wetlands mitigation would actually better prevent flooding by improving the capacity of Beaver Creek to carry storm water runoff away from the neighborhood. 411 argues that instead of offering countervailing facts regarding hydrology and engineering to back up their position, the opponents "merely speculated that the extensive engineering and permitting process intended to ensure compliance during the phases of construction and development would be inadequate, might be wrong, and might have an adverse effect on Beaver Creek and local neighborhoods." 411 contends that the statements of the opponents to the project "merely amounted to expressions of opinions on the ultimate issue, unsubstantiated by any factual premise."

In the context of quasi-judicial tribunals, such as the BZA, material evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a rational conclusion and such as to furnish as reasonably sound basis for the action under consideration. . . . Mere beliefs, opinions and fears of neighborhood residents do not constitute material evidence." *Sexton v. Anderson County*, 587 S. W. 2d 663, 666 (Tenn. Ct. App. 1979). This Court, in *Sexton* considered the denial of the BZA of plaintiff's application for permission to operate a sanitary landfill. The BZA had denied the application for a permit after a hearing where the opponents to the landfill had voiced their fears and objections about possible contamination of the land by using it as a landfill. The trial court and this Court held that the BZA denial of the permit was arbitrary upon a finding that no material facts were set forth by the opponents to support their position, thus, the action of the BZA was held to be invalid. This Court stated:

> Various members of the community expressed beliefs and opinions that the presence of the landfill would create noxious odors and result in falling property values; they also thought that trucks delivering refuse to the site of the fill would cause additional damage to the local roads. These statements were offered on the issue of whether the intended use is "potentially dangerous, noxious or offensive." None rises to the dignity of being material evidence on the issue. In each instance, the statements amount to an expression of opinion on the ultimate issue, unsubstantiated by factual premises. Speculations, expression of fears and considerations of an aesthetic or political nature do not form a basis to support a decision made by an administrative body charged with adjudicatory responsibility. *Harvey v. Rhea County Beer Board*, 563 S.W.2d 790 (Tenn.1978); *Ewin v. Richardson*, 217 Tenn. 534, 399 S.W.2d 318 (1966).

The opponents of the landfill attended the public hearing conducted by the board in substantial numbers and voiced strong and sincere beliefs that the operation would have an adverse impact on their community but none of their suggestions was supported by facts. No witness purported to have any knowledge of any odor problems at a landfill, either operated by Waste Management or operated in the same manner as the one proposed. . . .

In the absence of material evidence on these issues, the expression of fears by members of the community alone, however sincere, will not support the determination of the Board of Zoning Appeals.

*Sexton* at 665 - 666.

Here there is no doubt that those in opposition to the 411 Partnership development were sincere in their concern and fears that the project would cause an increase in flooding in the adjacent neighborhood and cause further degradation to Beaver Creek. However, not one opponent, including Mr. Hammond, offered any facts to refute the engineering plans submitted by 411 Partnership or to support their own contention that there would be increased flooding such that "a reasonable mind might accept as adequate to support a rational conclusion and such as to furnish as reasonably sound basis" for the denial of the use on review requested by 411. The testimony offered by the opponents to the project was based on opinions unsubstantiated by facts, including the statement of Mr. Hammond that "engineers make mistakes." If Mr. Hammond had provided reasons why the engineers had made mistakes in the plans at issue, his testimony could have provided material evidence to support the BZA's decision, but he did not. After a careful review of the BZA record, we conclude that the Trial Court was in error when it affirmed the BZA decision as there was no material substantial evidence in the record to support that decision. Essentially, the opponents of the development's evidence was opinion without a factual basis, and mere conclusions which is not sufficient to deny the development. We hold that the BZA's denial of 411 Partnership's appeal was arbitrary and invalid, and not supported by substantial material evidence.

We reverse the Trial Court's affirmation of the BZA's decision and hold that the BZA's decision was arbitrary and invalid. The decision of the Trial Court is reversed, and the cause remanded, with the cost of the appeal assessed to Knox County.

_____
HERSCHEL PICKENS FRANKS, P.J.

-10-