IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
June 3, 2015 Session

# THE METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY, TENNESSEE v. THE BOARD OF ZONING APPEALS OF NASHVILLE AND DAVIDSON COUNTY, TENNESSEE ET AL.

**Appeal from the Court of Appeals, Middle Section
Chancery Court for Davidson County
No. 12-910-II     Carol L. McCoy, Chancellor**

---

**No. M2013-01283-SC-R11-CV – Filed November 10, 2015**

---

We granted permission to appeal in this case to determine whether The Metropolitan Government of Nashville and Davidson County, Tennessee ("Metro") has standing to file a petition for a writ of certiorari against The Board of Zoning Appeals of Nashville and Davidson County, Tennessee ("BZA") in chancery court in order to challenge a BZA decision. We hold that Metro does have standing in this case. Accordingly, we affirm the decision of the Court of Appeals, and this matter is remanded to the chancery court for further proceedings consistent with this Opinion.

**Tenn. R. App. P. 11; Judgment of the
Court of Appeals Affirmed;
Remanded to the Chancery Court**

JEFFREY S. BIVINS, J., delivered the opinion of the Court, in which SHARON G. LEE, C.J., and CORNELIA A. CLARK, GARY R. WADE, and HOLLY KIRBY, JJ., joined.

Garrett E. Asher and Jennifer C. Surber, Nashville, Tennessee, for the appellants, CBS Outdoor, Inc.; Felix Z. Wilson II Revocable Living Trust; and Equitable Trust Company.

Saul Solomon, James L. Charles, Lora Barkenbus Fox, and Catherine J. Dundon, Nashville, Tennessee, for the appellee, The Metropolitan Government of Nashville and Davidson County, Tennessee.

Richard L. Winchester, Jr., Memphis, Tennessee, for the Amicus Curiae, Abbington Center.

# OPINION

## Factual and Procedural History

In March 2012, CBS Outdoor, Inc. ("CBS") applied to the Davidson County Metropolitan Department of Codes and Building Safety for two permits, one to replace a static display billboard with a digital display billboard, and the second to add a digital display to an existing static display billboard. The Zoning Administrator denied the permits. CBS appealed the Zoning Administrator's decision to the BZA. On a four to two vote, the BZA overturned the Zoning Administrator's decision and granted the permits.

On June 25, 2012, Metro timely filed a petition for writ of certiorari in the chancery court of Davidson County seeking the court's review of the BZA's order ("the Petition"). As respondents, Metro named the BZA, CBS, Felix Z. Wilson II Revocable Living Trust ("Wilson Trust"), and Equitable Trust Company ("Equitable Trust"). The latter two parties own the real property which is leased to CBS and upon which CBS seeks to erect or add the digital billboards.

CBS and Wilson Trust filed a motion to dismiss the Petition pursuant to Tennessee Rule of Civil Procedure 12.02(6) on the basis that Metro "does not have standing to bring suit seeking to review the final order of [Metro's] own Board." After a hearing, the chancery court granted the motion to dismiss. The chancery court reasoned as follows:

> [I]f Metro disagrees with what its own board of zoning appeals likes or dislikes, it can decide on an ad hoc basis of which of those decisions it's going to enforce, which of those decisions it disagrees with and will seek to overturn. There are plenty of avenues by which decisions of the board of zoning appeals are subject to the council's decision. Which, in essence, represents the Metropolitan Government's authority to control what happens in Nashville. They pass all sorts of enactments.

The chancery court also determined that Metro had failed to allege the specific injury necessary to confer standing on a litigant.

Metro sought review of the chancery court's ruling, and the Court of Appeals reversed the chancery court, holding that Metro had the requisite standing to bring this action. Metro. Gov't of Nashville & Davidson Cnty. v. Bd. of Zoning Appeals, No. M2013-01283-COA-R3-CV, 2014 WL 4364852, at *1 (Tenn. Ct. App. Sept. 3, 2014) ("Metro v. BZA"). CBS, Wilson Trust, and Equitable Trust (collectively "the

2

Permittees")[1] sought permission to appeal to this Court. We granted permission to appeal to address two issues: (1) whether Metro has standing to seek the chancery court's review of the BZA's decision, and (2) whether Metro had the requisite authority to file the Petition.[2]

## **Standard of Review**

A respondent to a petition for writ of certiorari may file a motion to dismiss pursuant to Tennessee Rule of Civil Procedure 12.02(6) based upon the petitioner's lack of standing. See Knierim v. Leatherwood, 542 S.W.2d 806, 808 (Tenn. 1976). "A Rule 12.02(6) motion challenges only the legal sufficiency of the [petition], not the strength of the plaintiff's proof or evidence." Webb v. Nashville Area Habitat for Humanity, Inc., 346 S.W.3d 422, 426 (Tenn. 2011). Accordingly, for the purposes of this proceeding, the Permittees have admitted "the truth of all of the relevant and material allegations contained in the [petition]." Leach v. Taylor, 124 S.W.3d 87, 90 (Tenn. 2004).

A trial court should not dismiss a petition pursuant to Rule 12.02(6) unless it appears that the plaintiff cannot prove the facts necessary to support its claim and warrant relief. Doe v. Sundquist, 2 S.W.3d 919, 922 (Tenn. 1999). On appeal, a trial court's decision to dismiss a petition for failure to state a claim creates a question of law which we review de novo with no presumption of correctness. Id.

## **Analysis**

### *Allegations of the Petition*

Because of the procedural posture of this matter, we deem it helpful to recite, in pertinent part, certain of Metro's allegations set forth in the Petition:

> 14. The BZA's decisions [to grant the permits] are contrary to law and should be reversed, or, in the alternative, the case should be remanded to the BZA for a correct consideration of the issues.

---

[1] According to the Permittees' brief, Equitable Trust had not yet been served as a party at the time the motion to dismiss was filed. Equitable Trust was served while the motion to dismiss was pending and "was properly before the [chancery] [c]ourt at the time" the order granting the motion to dismiss was entered.

[2] The Permittees did not challenge Metro's authority to file the Petition in their motion to dismiss. This Court asked the parties to address this issue in its Order granting the application for permission to appeal.

3

15. The BZA's decisions of April 26, 2012 would allow a permit for billboards in violation of the Metropolitan Government's zoning code, specifically the distance requirements of M.C.L. § 17.32.050(G) and M.C.L. § 17.32.150(B).[3]

16. CBS Outdoor, Inc. did not present (and cannot present) a proper justification under the local zoning code or under state law (e.g., T.C.A. § 13-7-208 or other law) for its position that it is not subject to the distance requirements of the Metropolitan Code.

17. The Metropolitan Government is an aggrieved party as contemplated under T.C.A. § 27-9-101 because the BZA's April 26, 2012 decision now interferes with the Metropolitan Government's ability to fulfill its obligations under the local zoning code (which, in turn, is authorized by the state enabling statutes as well as the Metro Charter), in that the distance requirements cannot be enforced at these sites.

18. For the same reasons, the BZA's decision, if left in place, will have a substantial, direct, and adverse effect on the Metropolitan Government in its corporate capacity.

We now turn to our analysis of whether Metro has established its standing to pursue the Petition.

*Standing*

As this Court previously has recognized:

> The doctrine of standing is used to determine whether a particular plaintiff is entitled to judicial relief. Knierim, 542 S.W.2d at 808. It is the principle that courts use to determine whether a party has a sufficiently personal stake in a matter at issue to warrant a judicial resolution of the dispute. SunTrust Bank, Nashville v. Johnson, 46 S.W.3d 216, 222 (Tenn. Ct. App. 2000). Persons whose rights or interests have not been affected have no standing and are, therefore, not entitled to judicial relief. Lynch v. City of Jellico, 205 S.W.3d 384, 395 (Tenn. 2006).

---

[3] Section 17.32.050 of Metro's Zoning Code expressly prohibits digital display signs unless they meet certain distance requirements, including the spacing requirements for billboards contained in section 17.32.150 of the Zoning Code. See Metro. Gov't of Nashville & Davidson Cnty., Tenn., Code § 17-32.050(G)(5) (2015), available at https://www.municode.com/library/tn/metro_government_of_nashville_and_davidson_county/codes/code_of_ordinances ("Metro Code").

4

"The sort of distinct and palpable injury that will create standing must be an injury to a recognized legal right or interest." Wood v. Metro. Gov't of Nashville & Davidson Cnty., 196 S.W.3d 152, 158 (Tenn. Ct. App. 2005). Such a legal right or interest may, but not must, be created or defined by statute. "[I]n cases where a party is seeking to vindicate a statutory right of interest, the doctrine of standing requires the party to demonstrate that its claim falls within the zone of interests protected or regulated by the statute in question." Id. (citing Fed. Election Comm'n v. Akins, 524 U.S. 11, 20 (1998)).

State v. Harrison, 270 S.W.3d 21, 27-28 (Tenn. 2008) (some citations shortened); see also West v. Schofield, __ S.W.3d __, __, 2015 WL 4035399, at *5 (Tenn. July 2, 2015) (recognizing that Tennessee's doctrine of justiciability, including the concept of standing, mirrors the federal courts' and limits judicial decisions to legal controversies involving real and existing disputes that are not theoretical or abstract and are between parties with real and adverse interests).

Significantly, we do not consider the likelihood of the plaintiff's success on the merits of its petition in determining whether the plaintiff has standing. Wood, 196 S.W.3d at 158. However, we must carefully examine a petition's allegations "to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted." Id. (quoting Allen v. Wright, 468 U.S. 737, 752 (1984)).

In this case, Metro is seeking relief pursuant to Tennessee Code Annotated section 27-9-101. Accordingly, we focus our standing inquiry "on considerations of judicial restraint, such as whether a complaint raises generalized questions more properly addressed by another branch of the government, and questions of statutory interpretation, such as whether a statute designates who may bring a cause of action or creates a limited zone of interests." City of Memphis v. Hargett, 414 S.W.3d 88, 98 (Tenn. 2013). Moreover, "[w]hen a statute creates a cause of action and designates who may bring an action, the issue of standing is interwoven with that of subject matter jurisdiction and becomes a jurisdictional prerequisite." Osborn v. Marr, 127 S.W.3d 737, 740 (Tenn. 2004).

*Tennessee Code Annotated Section 27-9-101*

Metro filed the Petition pursuant to Tennessee Code Annotated section 27-9-101, which provides as follows:

> *Anyone who may be aggrieved* by any final order or judgment of *any board* or commission functioning under the laws of this state may have the order

or judgment reviewed by the courts, where not otherwise specifically provided, in the manner provided by this chapter.

Tenn. Code Ann. § 27-9-101 (2000) (emphases added) ("Section 101").[4]

The role of this Court in statutory interpretation is to assign a statute the full effect of the legislative intent without restricting or expanding the intended scope of the statute. See Lee Med., Inc. v. Beecher, 312 S.W.3d 515, 526 (Tenn. 2010); Larsen-Ball v. Ball, 301 S.W.3d 228, 232 (Tenn. 2010). In doing so, we first must look to the text of the statute and give the words of the statute "their natural and ordinary meaning in the context in which they appear and in light of the statute's general purpose." Mills v. Fulmarque, Inc., 360 S.W.3d 362, 368 (Tenn. 2012). Therefore, when the language of a statute is clear and unambiguous, we need look no further than the plain and ordinary meaning of the statutory language. See id. That is, "we presume that every word in the statute has meaning and purpose and should be given full effect if the obvious intent of the General Assembly is not violated by so doing." Larsen-Ball, 301 S.W.3d at 232.

The Permittees argue that Metro cannot seek judicial review of the BZA's decision under Section 101 because our legislature declined to adopt the following provision included in the Standard State Zoning Enabling Act:

> Any person or persons, jointly or severally, aggrieved by any decision of the board of adjustment, or any taxpayer, *or any officer, department, board, or bureau of the municipality,* may present to a court of record a petition, duly verified, setting forth that such decision is illegal, in whole or in part, specifying the grounds of the illegality. Such petition shall be presented to the court within 30 days after the filing of the decision in the office of the board.

U.S. Dep't of Commerce, A Standard State Zoning Enabling Act Under Which Municipalities May Adopt Zoning Regulations § 7(3) (rev. ed. 1926) (emphasis added) ("the Omitted Provision"). The Permittees assert that our legislature's failure to enact the

---

[4] In the Petition, Metro also alleged that it was bringing the action pursuant to Tennessee Code Annotated section 27-8-101, the provision for seeking a common law writ of certiorari. See Stewart v. Schofield, 368 S.W.3d 457, 460 n.3 (Tenn. 2012) ("Tennessee Code Annotated section 27-8-101 codifies the common law writ of certiorari[.]"). A party seeking judicial review pursuant to Section 101 must do so by filing "a petition of certiorari." Tenn. Code Ann. § 27-9-102 (2000); see also Fallin v. Knox Cnty. Bd. of Comm'rs, 656 S.W.2d 338, 342 (Tenn. 1983) (recognizing that the remedy of certiorari provided by Tennessee Code Annotated sections 27-8-101 and 27-9-101 through 27-9-113 is "the proper remedy for one who seeks to overturn the determination of a Board of Zoning Appeals").

Omitted Provision demonstrates its intent that Metro be unable to obtain judicial review of the BZA's decision.[5]

We disagree. Section 101 refers to "anyone," and we conclude that Metro, a public corporation, falls within the scope of the term "anyone."[6] Indeed, our Court of Appeals has recognized that a municipality may bring suit pursuant to Section 101 to challenge a BZA decision. See City of Brentwood v. Metro. Bd. of Zoning Appeals, 149 S.W.3d 49, 59 (Tenn. Ct. App. 2004). The General Assembly's "failure" to enact the Omitted Provision does not serve to exclude Metro from inclusion in the term "anyone" set forth in Section 101. Nor are we aware of any other authority limiting the definition of the term "anyone," as that word is used in Section 101, to exclude Metro as a potential petitioner. Accordingly, we hold that Metro is included in the term "anyone" as that term is used in Section 101. We also hold that the BZA is included in the category "any board or commission functioning under the laws of this state" referred to in Section 101. Tenn. Code Ann. § 27-9-101; see also Fallin v. Knox Cnty. Bd. of Comm'rs, 656 S.W.2d 338, 342 (Tenn. 1983) (recognizing that the remedy of certiorari provided by Tennessee Code Annotated sections 27-8-101 and 27-9-101 through 27-9-113 is "the proper remedy for one who seeks to overturn the determination of a Board of Zoning Appeals"). Thus, we conclude that Metro is not precluded from suing the BZA pursuant to Section 101, regardless of the General Assembly's decision about the Omitted Provision.

Our holding comports with our Court of Appeals' recognition that the scope of those who may seek judicial review of the BZA's decision should be the same as the scope of those who may seek the BZA's review of the Zoning Administrator's decision. See City of Brentwood, 149 S.W.3d at 57.

> After all, persons authorized to appeal to the [BZA] from an adverse decision by the zoning administrator should likewise be authorized to seek judicial review if the [BZA's] decision is not to their liking. Any other conclusion would create an anomalous situation where some persons appealing to the [BZA] would be entitled to judicial review while others would not.

---

[5] The relevant textual difference between Section 101 and the Omitted Provision is that the "officer, department, board, or bureau of the municipality" referred to in the Omitted Provision need not be "aggrieved" in order to bring suit.

[6] Even were we to construe "anyone" as referring to "persons," the Tennessee Code defines "person" as including corporations. See Tenn. Code Ann. § 1-3-105(19) (2014). Metro is a public corporation, formed pursuant to Tennessee Code Annotated section 6-3703 (now codified at section 7-1-103 (2011)). See Metro Code § 1.01.

Id. Tennessee Code Annotated section 13-7-206(b) permits appeals to the BZA "by any person aggrieved *or by any officer, department, board or bureau of the municipality affected by any grant or refusal of a building permit . . . .*" Tenn. Code Ann. § 13-7-206(b) (2011) (emphasis added); see also id. § 13-7-108 (2011) (extending same authority to counties). Thus, section -206(b) contains the very language found in the Omitted Provision upon which the Permittees rest their statutory construction argument. In order to avoid the "anomalous situation" foreseen by our Court of Appeals, it behooves us to construe the term "anyone" in Section 101 as equivalent in scope to those persons described in section 13-7-206(b), which the Permittees, by negative inference, recognize as broad enough to include Metro.[7]

In sum, while Metro may not seek judicial redress from an adverse BZA decision pursuant to the Omitted Provision, we hold that Metro may seek such redress pursuant to Section 101, so long as it meets the statutory criterion of "aggrieved."

*Is Metro Aggrieved?*

Having concluded that Metro may qualify as "[a]nyone who may be aggrieved," we turn to the issue of whether Metro actually may be aggrieved by the BZA's decision in this case. As set forth above, litigants seeking judicial relief from a BZA decision pursuant to Section 101 must be "aggrieved" by the BZA's ruling. The Permittees contend that Metro is not "aggrieved" by the BZA's decision in this matter.

The Permittees argue that Metro cannot be aggrieved by its own BZA because "[t]he BZA is the one and only voice of Metropolitan Nashville on land use matters" and because the BZA "is the only entity allowed by the Metro Charter, Metro Code and the law as prescribed by the General Assembly to decide the correct interpretation of the law on land use matters." Preliminarily, we note that this assertion is incorrect as it omits any reference to the courts. Furthermore, Tennessee's courts, on occasion, have overturned BZA decisions. See, e.g., Demonbreun v. Metro. Bd. of Zoning Appeals, No. M2009-00557-COA-R3-CV, 2011 WL 2416722, at *17 (Tenn. Ct. App. June 10, 2011) (affirming trial court's reversal of BZA decision because "the BZA decision . . . constitutes arbitrary action"); Hoover, Inc. v. Metro. Bd. of Zoning Appeals, 924 S.W.2d 900, 906 (Tenn. Ct. App. 1996) (describing behavior of individual BZA board members as illegal, arbitrary, or fraudulent); Gregory v. Metro. Bd. of Zoning Appeals of the Metro. Gov't of Nashville & Davidson Cnty., No. 01-A-1-9009-CH00331, 1991 WL 17174, at *5 (Tenn. Ct. App. Feb. 15, 1991) ("The decision of the Board [of Zoning Appeals] was . . . arbitrary, capricious, and subject to judicial reversal."); see also, e.g., 411 P'ship v. Knox Cnty., 372 S.W.3d 582, 590-91 (Tenn. Ct. App. 2011) (reversing

---

[7] Counsel for the Permittees also conceded during oral argument that Metro is entitled, by state statute, to seek the BZA's review of a decision by the Zoning Administrator.

board of zoning appeals' decision on basis that it was "arbitrary and invalid, and not supported by substantial material evidence"). At times, the BZA renders legally incorrect decisions. Section 101 provides for access to the courts to correct such errors.

Thus, we arrive at the crux of the issue before us: Can Metro be aggrieved by an erroneous decision made by one of its own boards? We hold that it is possible for Metro to be "aggrieved" by a decision of the BZA. As recognized by our Court of Appeals, Section 101 "[e]xtend[s] the authority . . . to seek judicial review [of boards of zoning appeals decisions] to all persons who are 'aggrieved' [and] reflects an intention to ease the strict application of the customary standing principles." City of Brentwood, 149 S.W.3d at 57 (citing Akins, 524 U.S. at 19). And, "[w]hen applied to local governments, aggrievement encompasses interference with a local government's ability to fulfill its statutory obligations, or substantial, direct, and adverse effects on the local government in its corporate capacity." Id. at 58 (citation omitted); see also Wood, 196 S.W.3d at 158 (recognizing that, to be aggrieved for the purposes of Section 101, "a party must be able to show a special interest in the agency's final decision or that it is subject to a special injury not common to the public generally"); Op. Tenn. Att'y Gen. No. 10-108, 2010 WL 4312769, at *1 (Oct. 28, 2010) (opining that a county legislative body may challenge in court a board of zoning appeals' decision if the county legislative body can demonstrate that the board's decision "has interfered with the local government's ability to meet its statutory obligations or there exists some substantial, direct, and adverse effects on the local government in its corporate capacity as a result of" the decision).

Metro has alleged in the Petition that the BZA's decision will interfere with its duty to enforce certain of its ordinances. It is appropriate to note here that the underlying dispute in this matter is whether the grandfather clause, Tenn. Code Ann. § 13-7-208 (2011), exempts the Permittees' billboards from having to meet zoned distance requirements if they are converted from static display to digital display. Clearly, Metro disagrees with the BZA's position that the existing distance requirements for digital display billboards do not apply when those displays are erected to replace, or are added to, existing static billboards that are protected by the grandfather clause. More succinctly, Metro is alleging that the BZA's decision to grant the permits is contrary to law and will result in billboards that violate certain of Metro's ordinances. The only way that Metro can seek relief from the issuance of building permits that will result in structures allegedly in violation of Metro's own ordinances is through recourse to the court system.[8]

---

[8] We note that Metro's Charter provides that Metro has the power "[t]o regulate the erection of buildings and all other structures . . . and . . . to prohibit, regulate or suppress, or provide for the destruction and removal of any building or other structure which may be or become dangerous or detrimental to the public." Metro Code § 2.01(21).

Many of our sister states have recognized that a municipal government may have standing as an aggrieved party to sue its own board of zoning appeals or equivalent. For instance, the Virginia Supreme Court has held that Fairfax County had standing to sue its Board of Zoning Appeals after the Board granted a zoning variance to a landowner. See Bd. of Supervisors of Fairfax Cnty. v. Bd. of Zoning Appeals, 604 S.E.2d 7, 9 (Va. 2004). In that case, the relevant statute permitted judicial review of the Board of Zoning Appeals' decision by "[a]ny person or persons jointly or severally aggrieved" by the decision. Id. at 8 (quoting Va. Code Ann. § 15.2-2314). The Board of Zoning Appeals did not contest that the Board of Supervisors was "a person within the meaning of this statute," but contended that the Board of Supervisors was not "aggrieved." Id. The Virginia Supreme Court disagreed, reasoning:

> Without question, improper decisions of a board of zoning appeals can impede the uniform and proper application of zoning ordinances and the grant of improper variances can undermine and even destroy the very goals that the zoning classifications were enacted to achieve.
>
> Code § 15.2-1404 grants a local governing board the broad power to institute actions in its own name with regard to "all matters connected with its duties." One legislative purpose manifested in this statutory grant is to enable the local governing body to ensure compliance with its legislative enactments, including its zoning ordinance. If the local governing body does not have such authority, that body's legislative acts could be effectively nullified by a BZA, and the governing body would be powerless to take action to require compliance with its own ordinances. Moreover, a holding that would preclude a board of supervisors from seeking judicial review of a decision of a board of zoning appeals would enable a board of zoning appeals to exercise power arbitrarily. Certainly, the General Assembly did not contemplate such an untenable result.

Id. at 9 (and recognizing that "[t]his holding is consistent with the majority rule adopted by our sister states"); see also, e.g., Ex parte City of Huntsville, 684 So. 2d 123, 126-27 (Ala. 1996) (concluding that a governing body has standing as a "party aggrieved" to challenge the decision of its zoning board because, "[w]ithout standing to challenge the arbitrary granting of variances, the municipality is unable to prevent the improper application of its ordinances"); City of Burley v. McCaslin Lumber Co., 693 P.2d 1108, 1110 (Idaho Ct. App. 1984) (holding that, "[a]lthough Idaho Code [section] 67-5215 does not specifically authorize a municipality's right to appeal a decision of its own Zoning Appeals Board, a municipality or town may be deemed to be an 'aggrieved person' within the meaning of that section. Clearly the city, being interested in the maintenance and development of the city and the property contained therein, has an interest in the real

10

property which may be adversely affected by the wrongful issuance of a variance by the Zoning Appeals Board.") (citations omitted); Reichard v. Zoning Bd. of Appeals, 290 N.E.2d 349, 353 (Ill. App. Ct. 1972) (holding that municipality had standing to seek judicial review of its zoning board of appeals' decision and concluding, in dictum, that municipality was "aggrieved"); Crosby v. Town of Belgrade, 562 A.2d 1228, 1231 (Me. 1989) (recognizing that, "[i]n authorizing those parties representing the Town to appeal to the Superior Court when aggrieved by a decision of the [zoning] board of appeals, the law of Maine accords with the practice prevailing in other states"); City of Reno v. Harris, 895 P.2d 663, 666 (Nev. 1995) (recognizing that "[m]ost courts considering the issue have held a municipality may be an aggrieved person within the meaning of statutes authorizing such a person to institute proceedings to review a decision of a board of adjustment" and holding that a municipality has standing to seek judicial review of a zoning board decision because "a municipality has a vested interest in requiring compliance with its land use decisions"); Commco, Inc. v. Amelkin, 465 N.E.2d 314, 318 (N.Y. 1984) (recognizing town's authority as "any other 'person . . . aggrieved'" to seek judicial review of zoning board of appeals' decision); Lower Paxton Township v. Fieseler Neon Signs, 391 A.2d 720, 723 (Pa. Commw. Ct. 1978) (holding that township was a "party aggrieved" by zoning hearing board's decision and could therefore appeal board's decision to court); City of East Providence v. Shell Oil Co., 290 A.2d 915, 918 (R.I. 1972) (holding that a municipality may have standing to challenge its zoning board's decision because an "'aggrievement' in the public sense occurs whenever there is a threat to the very real and legitimate interest which the general public has in the preservation and maintenance of the integrity of the zoning laws").[9] But see, e.g., City of East Point v.

---

[9] Other jurisdictions provide statutory avenues for municipalities to seek judicial relief from zoning board decisions without the necessity that they be specifically aggrieved. See, e.g., Ariz. Rev. Stat. Ann. § 9-462.06(K) (Westlaw through 2015 First Regular Sess.) (permitting "an officer or a department of the municipality affected by a decision of the" zoning board of adjustment to seek judicial review); Conn. Gen. Stat. Ann. § 8-8(a)(1), (b) (Westlaw through August 1, 2015 legislation) (permitting "aggrieved persons" to appeal from a zoning board of appeals decision and defining aggrieved person as including "any officer, department, board or bureau of the municipality charged with enforcement of any order, requirement or decision of the board"); Md. Code Ann., Land Use § 4-401(a)(3) (Westlaw through Sept. 1, 2015 legislation) (authorizing "an officer or unit of the local jurisdiction" to seek judicial review of a board of zoning appeals decision); Mass. Gen. Laws Ann. ch. 40A § 17 (Westlaw through Ch. 75 of 2015 1st Annual Sess.) (permitting "any municipal officer or board" to appeal a decision of the zoning board of appeals); Mo. Ann. Stat. § 64.660.2 (Westlaw through 2015 First Regular Sess.) ("Any owners, lessees or tenants of buildings, structures or land jointly or severally aggrieved by any decision of the board of adjustment . . . or board, commission or other public official, may present to the circuit court of the county in which the property affected is located, a petition, duly verified, stating that the decision is illegal in whole or in part, specifying the grounds of the illegality and asking for relief therefrom."); see also City & Cnty. of Denver v. Bd. of Adjustment, 505 P.2d 44, 45 (Colo. App. 1972) (citing Colo. R. Civ. P. 106 and municipal code as authorizing municipality's suit against its own zoning board); Bd. of Cnty. Comm'rs of Sarasota Cnty. v. Bd of Zoning Appeal, 761 So. 2d 1217, 1218 (Fla. Dist. Ct. App. 2000) (citing local ordinance as permitting local government to sue its own board of zoning appeals); City

Crosby & Stephens, Inc., 160 S.E.2d 839, 841 (Ga. Ct. App. 1968) (holding that municipality lacked standing to seek judicial review of board of zoning appeals' decision because municipality failed to establish "aggrieved" status, i.e. special damages distinct from "that of a taxpayer merely seeking strict enforcement of the zoning laws for the general welfare of the community"); Common Council of Michigan City v. Bd. of Zoning Appeals, 881 N.E.2d 1012, 1015-16 (Ind. Ct. App. 2008) (holding that municipality was not aggrieved and therefore lacked standing to challenge board of zoning appeals' decision on basis that "a municipal legislative body, because it represents a community as a whole, generally does not suffer any special injury other than that sustained by the community as a whole by a board of zoning appeals decision"); Sabourin v. Town of Essex, 505 A.2d 669, 670 (Vt. 1985) (holding that municipality was limited by statute to seeking judicial review only of zoning board decisions involving the town plan or municipal bylaw).

We hold that, in this proceeding, Metro has established that it is "aggrieved" by its allegation that, if the BZA ruling is allowed to stand, it will be unable to enforce certain of its ordinances. That allegation is within Section 101's zone of interests. Accordingly, Metro has established its standing to bring this action under Section 101.

In holding that Metro has standing to pursue this action, we are persuaded particularly by the concern voiced by the Illinois Court of Appeals that "[a] rule that would preclude the municipality from seeking judicial review would, in effect, grant to zoning boards unbridled power not reviewable in any court except in situations where private citizens suffer injury different from that suffered by the general public." Reichard, 290 N.E.2d at 353. In the case of erroneous BZA decisions, it would leave the enforcement of Metro's zoning ordinances to those persons with resources sufficient to mount a challenge in court. The enforcement of a governmental body's zoning code should not depend upon the economic status of individuals. Cf. City of Huntsville, 684 So. 2d at 126 (recognizing that "the improper granting of variances [by a board of zoning adjustment] will not necessarily be challenged by many aggrieved parties because they might not have the resources for the litigation"). Indeed, such a scenario stands to defeat the very purpose of a zoning code.

---

of Willoughby Hills v. C. C. Bar's Sahara, Inc., 591 N.E.2d 1203, 1208 (Ohio 1992) (holding that "where a municipality's charter or its ordinances expressly allow the municipality to seek appellate review of determinations made by its board of zoning appeals, the municipality has standing pursuant to R.C. 2506.01 to 'attack or avoid' such decisions in the common pleas court. Alternatively, in the absence of a charter provision or ordinance which expressly provides for appellate review to the common pleas court, the municipality may only defend a decision of the board of zoning appeals on appeal to the common pleas court.").

In sum, we hold that Metro has demonstrated that it has the necessary standing to survive the Permittees' motion to dismiss.[10] Moreover, as recognized by our Court of Appeals in this matter, Tennessee Code Annotated section 13-7-208(a)(2) explicitly provides Metro with the authority to seek judicial redress in the event any structure "is proposed to be used in violation of any" of Metro's zoning ordinances. Tenn. Code Ann. § 13-7-208(a)(2) (2011). We agree with the Court of Appeals that, in this matter, Metro's utilization of Section 101 is the appropriate method of seeking such redress. See Metro v. BZA, 2014 WL 4364852, at *6.

*Metro's Authority to File the Complaint*

In our Order granting permission to appeal in this case, we requested the parties to address "what authorization is required for the filing of a petition for writ of certiorari on behalf of the Metropolitan Government appealing a decision by the Metropolitan Board of Zoning Appeals; and, whether such authorization was given for the filing of the petition for writ of certiorari in this case." The Permittees contend that Metro's Charter did not authorize it to file the Petition and that the Metro Council did not authorize filing of the Petition by resolution. Metro agrees that the Metro Council passed no resolutions regarding the Petition but contends that Metro's Charter authorized its Department of Law to file the Petition.

Although we requested the litigants to address this issue in this appeal, our review of the record reveals that this issue was not raised before the trial court. Accordingly, neither proof nor argument was presented to the trial court regarding Metro's authority to file the Petition. Because the record is insufficient for this Court to resolve this issue, we decline to address it.

---

[10] In their reply brief to this Court, the Permittees contend that Metro was foreclosed from seeking judicial review of the BZA's decision because Metro did not appear at the hearing before the BZA. This contention is waived because it was not raised in the Permittees' motion to dismiss. See, e.g., Dick Broad. Co. of Tenn. v. Oak Ridge FM, Inc., 395 S.W.3d 653, 670 (Tenn. 2013) ("Issues raised for the first time on appeal are waived."); Dye v. Witco Corp., 216 S.W.3d 317, 321 (Tenn. 2007) (same); Civil Serv. Merit Bd. of Knoxville v. Burson, 816 S.W.2d 725, 735 (Tenn. 1991) (same). Moreover, we note that the transcript of the hearing before the BZA reveals that the Zoning Administrator presented Metro's position and the reasons supporting denial of the permits.

The Permittees also complain in their reply brief that Metro failed to provide the BZA with legal representation in the chancery court proceeding. Although it is unclear how the Permittees may be entitled to relief on the basis of another party's lack of legal representation, we do note that Metro asserted in its response to the motion to dismiss that the BZA "ha[d] not requested an attorney" in the chancery court. However, no actual proof appears in the record on this point. Therefore, upon remand, the BZA should be provided an opportunity to seek independent legal counsel.

13

## Conclusion

The chancery court erred in granting the Permittees' motion to dismiss on the basis that Metro lacked standing, and the Court of Appeals was correct in overruling the chancery court. Accordingly, we affirm the Court of Appeals' judgment and remand this matter to the chancery court for further proceedings consistent with this Opinion.

_____
JEFFREY S. BIVINS, JUSTICE