**Beverly S. JENKINS and Tommy J. Jenkins, Plaintiffs/Appellants,**

v.

**CSX TRANSPORTATION, INC. Defendant/Appellee.**

Court of Appeals of Tennessee, Western Section, at Nashville.

April 26, 1995.

Application for Permission to Appeal Denied by Supreme Court Aug. 28, 1995.

Ralph B. Christian, Nashville, for Plaintiffs/Appellants.

A. Scott Derrick, Gareth S. Aden, Gullett, Sanford, Robinson & Martin, Nashville, for Defendant/Appellee.

FARMER, Judge.

Appellants, Beverly S. Jenkins and her husband, Tommy J. Jenkins, appeal from an entry of summary judgment in favor of CSX Transportation, Inc. (CSX) on their nuisance and negligence claims.

The appellants began leasing their Nashville house in November of 1988, and eventually purchased it in March of 1992. The house is located adjacent to CSX's railroad yards. CSX regularly transports railroad ties which have been treated with creosote through its yards. The creosote-soaked ties are transported on rail cars which at times are parked in front of or near the house while CSX processes the cars.

On August 23, 1991, the appellants first noticed the smell of creosote in their house. Mrs. Jenkins had physical reactions to the fumes, including a headache, facial swelling, nausea, itchy and watery eyes, and sneezing. Mr. Jenkins complained that day to CSX employees about the creosote fumes reaching their house and causing Mrs. Jenkins' reactions. As a result of her reactions, on August 24, 1991, Mrs. Jenkins called her family physician, Dr. Robert Hollister, who later treated her at the emergency room. Mrs. Jenkins was then admitted to the hospital where she stayed four days.

Mrs. Jenkins noticed and reacted to the fumes again on September 4, September 6, September 12, and September 17 of 1991. Each time, the appellants notified CSX employees of the problems Mrs. Jenkins was having, but did not obtain the relief they sought from CSX. The appellants also experienced these difficulties in October and November of 1991. On December 19, 1991, Mrs. Jenkins again had a reaction to the creosote odors which required her hospitalization the next day. The appellants have, since that time, continued to notice the creosote fumes and Mrs. Jenkins has continued to have allergic reactions to the fumes.

Dr. Hollister testified by deposition that the rash and respiratory symptoms suffered by Mrs. Jenkins were related to her exposure to the creosote, which is considered a phenol. Dr. Hollister also testified that he diagnosed Mrs. Jenkins as having an acute reaction to the creosote fumes. He testified that he treated Mrs. Jenkins for this allergic reaction on three occasions. Dr. Hollister, who graduated from medical school in 1954 and has continuously practiced since then, testified that he had never treated a patient, other than Mrs. Jenkins, for an allergic reaction to creosote.

In support of its motion for summary judgment, CSX offered the affidavit of Dr. Robert Owen. Dr. Owen's medical specialty is otolaryngology, but his sub-specialty in practice is allergy and sinus medicine. Dr. Owen owns and directs the Owen Allergy and Sinus Center in Nashville where a large part of his practice consists of treating patients with allergic reactions. In his affidavit, Dr. Owen testified that Mrs. Jenkins' allergic reaction to phenol or phenol fumes, as described and diagnosed by Dr. Hollister, is extremely rare. He testified further that in his more than 30 years clinical experience, in which he has treated thousands of patients for allergy problems, he has never diagnosed a phenol allergy or allergic reaction.[1]

---

1. As an illustration of the extreme rarity of Mrs. Jenkins' reaction, Dr. Owen testified that phenol is a preservative found in allergy salines commonly used as a negative control for allergy testing. To further illustrate that phenol is a non-allergic substance, Dr. Owen testified that his office uses the solution Diluent, which contains 0.4 percent phenol and is manufactured for

The trial court entered summary judgment in favor of CSX on the nuisance claim on the basis that Mrs. Jenkins' allergic reactions to creosote resulted from her hypersensitivity to the chemical and were not experienced by persons of normal sensibilities. The court also determined that summary judgment was also appropriate as to the appellants' claim of negligence because they failed to show any breach of duty or standard of care, and furthermore they had knowingly purchased the house after they had become fully aware of Mrs. Jenkins' allergic reaction to the creosote.

The appellants state the following issue on appeal, "[d]id the trial court err in granting defendant's motion for summary judgment and denying plaintiffs' motion to alter or amend."

■ A nuisance is anything which annoys or disturbs the free use of one's property, or which renders its ordinary use or physical occupation uncomfortable. *Caldwell v. Knox Concrete Products, Inc.,* 54 Tenn.App. 393, 391 S.W.2d 5, 9 (1964). A nuisance extends to everything that endangers life or health, gives offense to the senses, violates the laws of decency, or obstructs the reasonable and comfortable use of the property. *Id.* at 9. However, the Tennessee Court of Civil Appeals recognized that what constitutes a nuisance is not measured by its effect on the hypersensitive:

> The criterion for determining whether or not a particular use of property is a nuisance is its effect upon persons of ordinary health and sensibilities, and ordinary modes of living, and not upon those who, on the one hand, are morbid or fastidious or peculiarly susceptible to the thing complained of, or, on the other hand, are unusually insensible thereto.

*Johnson v. Cowden,* 5 Tenn.Civ.App. 1, 7 (1914). This early statement of the law in Tennessee conforms with the general rule as stated in the *Restatement (Second) of Torts* § 821F (1979), "[t]here is liability for a nuisance only to those to whom it causes significant harm, of a kind that would be suffered by a normal person in the community or by

the purpose of being a neutral, that is, non-

property in normal condition and used for a normal purpose." With regard to defining significant harm as to a particular plaintiff,

> The standard for the determination of significant character is the standard of normal persons or property in the particular locality. If normal persons living in the community would regard the invasion in question as definitely offensive, seriously annoying or intolerable, then the invasion is significant. *If normal persons in that locality would not be substantially annoyed or disturbed by the situation, then the invasion is not a significant one, even though the idiosyncrasies of the particular plaintiff may make it unendurable to him.*

*Id.* § 821F cmt. d (emphasis added).

Summary judgment may be granted where the pleadings, depositions, answers to interrogatories, admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Tenn.R.Civ.P. 56. In determining whether a genuine issue of material fact exists, the question should be considered in the same manner as a motion for directed verdict made at the close of plaintiff's proof, i.e., taking the strongest legitimate view of the evidence in favor of the nonmoving party, allowing all reasonable inferences in favor of that party, and discarding all countervailing evidence. *Byrd v. Hall,* 847 S.W.2d 208, 215 (Tenn.1993).

■ Under this standard, we assume that Mrs. Jenkins does suffer from an allergic reaction to creosote. Furthermore, for purposes of evaluating the granting of summary judgment, we proceed on the assumption that her exposure to the creosote-treated ties which pass through CSX's rail yards has caused her to suffer these allergic reactions. Under these facts, however, there is no genuine issue for trial as it has also been shown that Mrs. Jenkins' allergic reaction to the creosote is an extremely rare condition. Therefore, the appellants cannot sustain a nuisance action against CSX because the invasion complained of, the creosote fumes, affects Mrs. Jenkins only because of her

reactive, control in allergy testing.

peculiar susceptibility to that chemical. *See Erickson v. Hudson*, 70 Wyo. 317, 249 P.2d 523 (1952).

We note that after CSX filed Dr. Owen's affidavit with its motion for summary judgment, the appellants did not file an affidavit or other discovery materials to counter Dr. Owen's testimony. Where a party makes a properly supported summary judgment motion, the burden is then on the nonmoving party to set forth specific facts, not legal conclusions, by affidavit or other discovery materials, establishing that there are disputed material facts creating a genuine issue to be resolved by the trier of fact. *Byrd*, 847 S.W.2d at 215. The appellants insist before this court that a question as to the rarity of an allergic reaction to creosote has been created through the deposition testimony of Dr. Hollister. They argue that while *exposure* to creosote is rare, an allergic reaction once a person has been exposed to creosote is not. The record does not support this argument. The testimonies of Dr. Hollister and Dr. Owen instead confirm that Mrs. Jenkins' allergic reaction to creosote is a rare condition.

The appellants also alleged in their complaint that "Defendant, its agents, servants and/or employees improperly, carelessly, and negligently used defendant's property to injure plaintiffs...." No claim for negligence can succeed in the absence of any one of the following elements: (1) a duty of care owed by the defendant to the plaintiff; (2) conduct falling below the applicable standard of care amounting to a breach of that duty; (3) an injury or loss; (4) causation in fact; and (5) proximate cause, or legal cause. *Bradshaw v. Daniel*, 854 S.W.2d 865, 869 (Tenn.1993). Whether the defendant owes a duty to the plaintiff is entirely a question of law for the court to determine by reference to the body of statutes, rules, principles and precedents which make up the law. *Id.* at 869. Under the facts of this case, we hold that CSX did not owe a duty to the appellants with respect to the ordinary transportation of the creosote-treated ties through its rail yards. Having failed to establish a duty or standard of care, the appellants cannot recover on a negligence theory. Summary

judgment was therefore appropriately entered on this ground as well. *See id.* at 870.

The judgment of the trial court is affirmed. Costs of this appeal are taxed against the appellants, for which execution may issue if necessary.

TOMLIN, P.J. (W.S.), and CRAWFORD, J., concur.