IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
April 3, 2024 Session

## HOWARD LEVY v. JAMES FRANKS ET AL.

**Appeal from the Chancery Court for Williamson County**
No. 44563    Deanna B. Johnson, Judge

_____

### No. M2022-00231-COA-R3-CV

_____

This appeal concerns claims for nuisance, intentional infliction of emotional distress, and enforcement of a local zoning ordinance. The plaintiff, Howard Levy, alleged that his neighbor, James Franks, engaged in an intentional and malicious course of conduct that included paving over a corner of Levy's property, building a wooden fence along Levy's property line, and routing construction vehicles over the parties' shared driveway. Levy also alleged that the fence violated the Zoning Ordinance of Franklin, Tennessee, and that Franks was operating a construction company on his property in violation of the same. The trial court dismissed Levy's fence-zoning claim at the summary judgment stage because he had not produced evidence that he was "specially damaged" as required by Tennessee Code Annotated § 13-7-208(a)(2). At the close of Levy's proof during the bench trial, the court dismissed the remaining claims pursuant to Tennessee Rule of Civil Procedure 41.02. The court also enjoined Levy from interfering with the installation of underground power lines under Tennessee Rule of Civil Procedure 65.04(2). This appeal followed. We conclude the trial court was without jurisdiction to enter the injunction, which was unrelated to any of the underlying claims, but we affirm the trial court's judgment in all other respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part and Vacated in Part**

FRANK G. CLEMENT JR., P.J., M.S., delivered the opinion of the Court, in which W. NEAL MCBRAYER and JEFFREY USMAN, JJ., joined.

Donald Capparella and Jacob A. Vanzin, Nashville, Tennessee, for the appellant, Howard Levy.

Ellis A. Sharp and Annie S. Duncan, Knoxville, Tennessee, for the appellees, Tennessee Valley Homes, Inc., and Old South Construction, LLC.

Alaric A. Henry and Cloe E. Kennedy, Chattanooga, Tennessee, for the appellees, James Franks and the 2013 Franks Investment Services Trust.

## OPINION

### FACTS AND PROCEDURAL BACKGROUND

Howard Levy owns and lives on a one-acre parcel of land on Holly Hill Drive in Williamson County, Tennessee. James Franks lives on a neighboring parcel owned by the 2012 Franks Investment Services Trust ("the Trust").[1]

This is Levy's second lawsuit against Franks. *See Levy v. Franks* ("*Levy I*"), 159 S.W.3d 66 (Tenn. Ct. App. 2004). In the first, Levy asserted claims for, *inter alia*, intentional infliction of emotional distress ("IIED") and malicious prosecution. *Id*. at 69. The trial court found in Levy's favor on the claim for malicious prosecution but not the claim for IIED. *Id*. at 79–80. On appeal, we reversed the dismissal of the IIED claim and remanded for an award of punitive damages. *Id*. at 86. The trial court entered its final order on remand in March 2006.

Nearly ten years later, in October 2015, Levy commenced the present action by filing a complaint against Franks and the Trust ("Defendants") for violation of a court order from *Levy I* and violation of the Zoning Ordinance of Franklin, Tennessee ("the Franklin Zoning Ordinance" or "FZO").[2] Levy alleged that Defendants built a wooden fence along Levy's property line that violated the FZO's height and orientation requirements, and he asserted that the fence's location violated the prior court order by narrowing the entrance to his driveway.[3]

After answering the complaint and conducting limited discovery, Defendants moved for summary judgment on Levy's fence-zoning claim based on the affidavit of Christopher Bridgewater, Director of the Building & Neighborhood Services Department for the City of Franklin, Tennessee. Mr. Bridgewater said that the City had already

---

[1] Franks and his wife, Rhonda, conveyed their property to the Trust before the commencement of this action.

[2] Levy later added two of Franks' construction companies—Tennessee Valley Homes, Inc. and Old South Construction, LLC—as defendants. Levy alleged that some of Franks' actions were taken by and through these entities. None of the facts relevant to this appeal directly involve these companies, and Levy did not assert separate claims against them. For these reasons, we have elided the construction companies from our discussion of the facts.

[3] Levy's claim to enforce the *Levy I* order is not at issue on appeal.

determined that Defendants' fence conformed to the FZO's requirements. Levy responded by challenging the veracity of the City's decision.

The trial court held that Mr. Bridgewater's opinion was not dispositive on whether Franks' fence complied with the FZO. Still, the court dismissed Levy's zoning claim because he had not alleged or produced evidence that he was "specially damaged" by the zoning violations as required in Tennessee Code Annotated § 13-7-208(a)(2).[4]

Two months later, Levy moved to revise the court's summary judgment under Tennessee Rule of Civil Procedure 54.02.[5] Levy asserted that the record contained evidence that he was specially damaged because he testified during his deposition that the zoning violations diminished the value of his property by $40,000. In the alternative, Levy provided a supplementary affidavit in which he opined that the zoning violations reduced his property value by "a minimum of 5%" and negatively impacted his use and enjoyment. But the trial court denied Levy's motion, reasoning that "[t]he time to submit such documents is before the Court rules, not after." (Emphasis in original).

Levy then amended his complaint with permission of the court to add claims for nuisance; IIED; civil conspiracy; and violation of the FZO's accessory-use regulations.[6] Levy alleged that Franks' fence was a nuisance because it created a safety hazard at the entrance to his driveway and blocked Levy's view of a pond on the Trust's property. Levy alleged that Defendants were violating the FZO's accessory-use regulations by operating a construction company on their property. As for his IIED claim, Levy asserted that Defendants' actions constituted an intentional course of conduct to inflict emotional distress on Levy.

---

[4] Tennessee Code Annotated § 13-7-208(a)(2) authorizes private actions to enforce local zoning codes and provides in material part:

> In case any building or structure is or is proposed to be erected, constructed, reconstructed, altered, converted or maintained . . . in violation of any ordinance enacted under this part and part 3 of this chapter, . . . a**ny adjacent or neighboring property owner who would be specially damaged by such violation**, may, in addition to other remedies, institute injunction, mandamus or other appropriate action or proceeding to . . . correct or abate such violation . . . .

(Emphasis added).

[5] Levy styled his motion as one to "alter or amend" the court's decision under Tennessee Rule of Civil Procedure 59.04 and 54.02. When a judgment is interlocutory, a "motion to revise" under Rule 54.02 is the proper avenue for seeking such relief. *See Harris v. Chern*, 33 S.W.3d 741, 743–45 (Tenn. 2000).

[6] Levy also asserted a claim for trespass, which is not at issue on appeal.

Defendants answered the amended complaint, and the Trust asserted counterclaims for civil trespass and contribution to the cost of maintenance for the parties' shared driveway. The Trust asserted the same claims in a third-party complaint against Levy's wife, Suzanne. In response, Levy amended his complaint to allege that the Trust's trespass claim was another attempt to inflict emotional harm on Levy.

The Trust eventually nonsuited both its countercomplaint and third-party complaint. Defendants then filed motions for summary judgment on all remaining claims, which the trial court denied.

Meanwhile, the Trust asked for Levy's consent to close the shared driveway for a few hours while the local electric company moved the Trust's electrical lines underground. Levy, however, would not agree without an opportunity to conduct discovery. Thus, the Trust sought an injunction under Tennessee Rule of Civil Procedure 65.04 to prohibit Levy from interfering with its plan. After a hearing, the trial court granted the injunction, reasoning that the Trust had an immediate need to bury the lines because the existing, above-ground lines were being overgrown with tree limbs.

The parties then proceeded to a trial that was scheduled for four days in June 2021. But at the end of the scheduled days, Levy still had not completed his presentation of evidence. Thus, the parties returned to court in October 2021. Thereafter, during Franks' testimony, Levy's counsel attempted to introduce a document that purportedly contained the FZO's accessory use regulation. But Defendants objected on the ground that it was uncertified. Levy's counsel then produced certified copies of the regulation and moved for judicial notice under Tennessee Rule of Evidence 202(b). The trial court, however, denied the motion on the ground that Levy had not provided "reasonable notice" to Defendants.

At the close of Levy's proof, Defendants moved to dismiss the action under Tennessee Rule of Civil Procedure 41.02. After hearing argument from the parties, the trial court announced that it was granting Defendants' motion. In its Memorandum and Order of January 26, 2022, the court held that Levy's IIED claim was barred by the statute of limitations because both Levy and his wife had testified that Levy was "very upset" about Defendants' actions in 2013—some four years before Levy asserted his IIED claim. Alternatively, the court held that Levy "failed to prove that the Defendants intentionally or recklessly caused him emotional distress." The court reasoned, *inter alia*, that (1) the asphalt encroachment resulted from an honest mistake by a third-party paver; (2) the construction traffic was due to renovations and farming operations on the Trust's property; (3) the fence was installed as part of an ongoing project to enclose all sides of the Trust's property; and (4) the Trust's counterclaim for trespass was made in good faith.

Based on these and other findings, the trial court also held that Levy did not prove that the wooden fence was a nuisance or that Franks was "operating" a construction company on the Trust's property in violation of the FZO. Because the court was dismissing all of Levy's tort claims, it also dismissed Levy's claim for civil conspiracy. Defendants

- 4 -

then moved for an award of their discretionary costs, which Levy did not oppose, and the court awarded them $50,527.

This appeal followed.

## ISSUES

We have determined that the dispositive issues in this appeal are as follows:[7]

_____

[7] Levy raises eight issues on appeal, which he states as follows:

(1) The trial court erred in granting partial summary judgment dismissing Mr. Levy's claim that the Fence built by the defendants violated the Franklin Zoning Ordinances and should be removed, when there were material issues of fact regarding whether Mr. Levy was "specially damaged" by the non-conforming fence built by Defendants.

(2) The trial court abused its discretion in refusing to alter or amend its ruling granting partial summary judgment of Mr. Levy's Fence Ordinance claims, where the trial court granted the motion based upon arguments and facts not raised by the defendants, and Mr. Levy provided new additional facts that show the trial court's decision to grant partial summary judgment was in error.

(3) The evidence preponderated against the trial court's dismissal under Tenn. R. Civ. P. 41.02 of Mr. Levy's claim for Declaratory Judgment, where the proof established a prima facie case of a "Spite Fence," and also that the Fence was a nuisance.

(4) The evidence preponderated against the trial court's dismissal under Tenn. R. Civ. P. 41.02 of Mr. Levy's claim that the defendants were operating a construction company in violation of a City of Franklin Ordinance, and the trial court abused its discretion in excluding as evidence the City Ordinance prohibiting the operation of a construction company on residential property.

(5) The evidence preponderated against the trial court's dismissal under Tenn. R. Civ. P. 41.02 of Mr. Levy's claim for intentional infliction of emotional distress (1) where Mr. Levy's claim was not untimely filed outside the one-year statute of limitations, and (2) the proof established a prima facie case on the merits.

(6) The trial court erred as a matter of law for granting the Trust a permanent injunction against Mr. Levy where the injunction request was procedurally improper and unmerited on the face of the request.

(7) Should the Court of Appeals reinstate one or more of Mr. Levy's claims, it should also reinstate Mr. Levy's claims for civil conspiracy and punitive damages against the defendants.

(1) Whether Levy's deposition testimony and supplemental affidavit established a genuine issue of material fact on whether Levy was "specially damaged" by the allegedly nonconforming height and orientation of Franks' fence.

(2) Whether the evidence clearly and convincingly preponderates against the trial court's determination that Franks was credible when he testified that the fence was built for reasons other than to harass Levy.

(3) Whether the evidence preponderates against the trial court's finding that the fence does not interfere with Levy's use of his property and therefore is not a nuisance.

(4) Whether the trial court erred by not taking judicial notice of the FZO's accessory-use regulation.

(5) Whether the evidence preponderates against the trial court's finding that Levy failed to prove Franks intentionally or recklessly caused him emotional distress.

(6) Whether the trial court erred by enjoining Levy from interfering with the Trust's conversion of its above-ground electrical lines.

## STANDARD OF REVIEW

We review a trial court's entry of a summary judgment de novo with no presumption of correctness. *See Lemon v. Williamson Cnty. Schs.*, 618 S.W.3d 1, 12 (Tenn. 2021). When doing so, we must make "a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied." *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015). Summary judgment is proper only when the record "shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04.

We review the trial court's decision on a Rule 41.02 motion "de novo with a presumption that the trial court's findings are correct." *Burton v. Warren Farmers Coop*, 129 S.W.3d 513, 521 (Tenn. Ct. App. 2002). When doing so, we give "great weight to the trial court's assessment of the evidence because the trial court is in a much better position to evaluate the credibility of the witnesses." *Id.* We will affirm the trial court's decision

---

(8) Should the Court of Appeals reverse the trial court in whole or in part, it should also reverse the trial court's award of discretionary costs because the defendants would not be the prevailing parties.

"unless the evidence preponderates against the trial court's factual determinations or unless the trial court has committed an error of law affecting the outcome of the case." *Id*.

## ANALYSIS

### I. FENCE-ZONING CLAIM

Levy contends that the trial court erred by dismissing his fence-zoning claim under Tennessee Rule of Civil Procedure 56 because there were a genuine issues of material fact as to whether he was "specially damaged" by the fence's allegedly non-conforming features.[8]

Rule 56 directs courts to enter "the judgment sought" when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Tenn. R. Civ. P. 56.04. A fact is material "if it must be decided in order to resolve the substantive claim or defense at which the motion is directed." *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993). "[D]isputes of material fact are 'genuine'—and therefore preclude the entry of summary judgment—only if the evidence produced at the summary judgment stage 'is such that a reasonable jury could return a verdict for the nonmoving party.'" *Pandharipande v. FSD Corp.*, 679 S.W.3d 610, 618 (Tenn. 2023) (quoting *Rye*, 477 S.W.3d at 251).

Levy's fence-zoning claim is governed by Tennessee Code Annotated § 13-7-208(a)(2), which provides in material part:

> In case any building or structure is or is proposed to be erected, constructed, reconstructed, altered, converted or maintained . . . in violation of any ordinance enacted under this part and part 3 of this chapter, . . . any adjacent or neighboring property owner who would be **specially damaged by such violation**, may, in addition to other remedies, institute injunction, mandamus or other appropriate action or proceeding to . . . correct or abate such violation . . . .

(Emphasis added).

In the context of private zoning enforcement actions, the "specially damaged" element requires the plaintiff to "show damages peculiar to himself and which are not

---

[8] Levy also contends that the trial court erred by not considering his supplemental affidavit and denying his motion to revise under Tennessee Rule of Civil Procedure 54.02. Because we have determined that Levy's supplemental affidavit fails to establish a genuine issue of material fact, we need not address the trial court's decision to deny Levy's motion to revise.

shared by other property owners in the general area; a mere showing that the defendant's use of his property is non-conforming, without more, does not authorize private enforcement." *Angelo v. Cook*, No. C.A. 275, 1990 WL 51304, at *1 (Tenn. Ct. App. Apr. 26, 1990) (citing *City of Knoxville v. Peters*, 191 S.W.2d 164 (Tenn. 1945)). It is well-established that a property owner is "specially damaged" when the alleged violations cause a depreciation in property value. *Torbett v. Anderson*, 564 S.W.2d 676, 677 (Tenn. Ct. App. 1978) (citations omitted). A plaintiff may also show that he is specially damaged by establishing that the defendant's actions interfered with the plaintiff's use and enjoyment of his property. *See,* generally, 4 Rathkopf's The Law of Zoning and Planning § 63:19 (4th ed.).

In his complaint, Levy alleged that the cross-planks on Defendants' fence are attached to the wrong side of the fence posts and that the fence is 12 to 18 inches taller than the maximum allowed in § 5.6.4 of the FZO, which purportedly limits fences to 3 feet in height and requires them to face away from the owner's property.[9] Thus, to establish a genuine issue of material fact on whether he was "specially damaged" by "the violation," Levy needed to produce evidence from which a rational jury could conclude that the placement of cross planks and excess height harmed Levy in a way "not shared by other property owners in the general area." *Angelo v. Cook*, No. C.A. 275, 1990 WL 51304, at *1 (Tenn. Ct. App. Apr. 26, 1990); *see Pandharipande*, 679 S.W.3d at 618.

On appeal, Levy contends that he satisfied his burden through his deposition testimony and supplemental affidavit. During his deposition, Levy opined that the violations decreased the value of his property by $50,000. And in his supplemental affidavit, Levy opined that the violations decreased the value of his property by a "minimum of 5%." Levy also alleged that the fence diminished his use and enjoyment of the property because the fence blocked his view of the Trust's pond and made it more costly to landscape. Levy alleged that the nonconforming cross planks impacted his use and enjoyment by making the fence look like it belonged to Levy rather than Defendants.

For the reasons explained below, we conclude that no reasonable jury could find Levy was specially damaged based on his testimony regarding value; thus, Levy did not show a genuine issue of material fact as to whether he was specially damaged in that regard. *See Pandharipande*, 6797 S.W.3d at 618. Further, assuming *arguendo* that Levy's evidence of injury to his use and enjoyment was sufficient to survive summary judgment, we conclude that any error by the trial court was harmless.

---

[9] The record does not contain an authenticated copy of the FZO or § 5.6.4, and Levy did not ask the trial court or this court to take judicial notice of the ordinance or any part thereof.

## A. Use and Enjoyment

Levy contends that his supplemental affidavit was competent evidence that the fence's nonconforming height and orientation caused injury to his use and enjoyment of his property. Levy's argument is based on the law of nuisance, under which a party may be held liable for "the wrongful invasion of the use and enjoyment of property." *Aldridge v. Morgan*, 912 S.W.2d 151, 155 (Tenn. Ct. App. 1995); *see also* Rathkopf, *supra*, § 63:14 (explaining that the "specially damaged" requirement comes from the law of nuisance). To show an actionable injury in a nuisance claim, the alleged invasion must be substantial and unreasonable. *See Shore v. Maple Lane Farms, LLC*, 411 S.W.3d 405, 415 (Tenn. 2013).

To begin, we note that—in his supplemental affidavit—Levy intermingled arguments on whether he was "specially damaged" by the fence's height and orientation with his arguments on whether the fence was built on his side of the property line or was built for "nefarious uses." But for the purpose of this issue, the only relevant parts of Levy's affidavit are those that address the effect of "the violations," i.e., the allegedly non-conforming height and orientation. *See* Tenn. Code Ann. § 13-7-208(a)(2) (claimant must be "specially damaged by **the violation**" (emphasis added)). On use and enjoyment, Levy alleged in relevant part as follows:

> 13.     . . . There is an absolute loss of the scenic views that existed prior to the construction of the Fence. The Fence Violations interfere with these views.

> 14.     The Fence's configuration, which violates the Fence Laws, also has a direct impact on my use and enjoyment of my property as it gives the appearance that I own the Fence.

In support, Levy attached photographs that show his "view" before and after the fence was built:

 

Assuming arguendo that this evidence was sufficient to show special damages at the summary judgment stage, we conclude that any error by the trial court was harmless. This court "cannot reverse for matters which, in our opinion, would not alter the outcome of the litigation." *O'Brien v. Smith Bros. Engine Rebuilders*, 494 S.W.2d 787, 794 (Tenn. Ct. App. 1973).

Here, after the dismissal of his fence-zoning claim, Levy filed an amended complaint that added a nuisance claim based on the fence. Unlike Levy's fence-zoning claim, Levy's nuisance claim went to trial. But like Levy's fence-zoning claim, Levy's nuisance claim arose from an alleged injury to Levy's use and enjoyment of his property. *See Shore*, 411 S.W.3d at 415. After Levy's presentation of evidence, the court concluded that the fence did not "rise to the level of an offensive or inconvenient interference for a 'normal person'" and that Levy had not proven the fence "substantially or unreasonably interferes with the use and enjoyment of his property."

As discussed further below, we have concluded that the evidence does not preponderate against the court's finding on Levy's nuisance claim. Thus, we cannot say that the trial court's failure to consider Levy's evidence of injury to his use and enjoyment of the property at the summary judgment stage altered the outcome of the litigation.

## B. Value

The crux of Levy's argument regarding value is that his opinion was admissible under Tennessee Rule of Evidence 701(b), which states that "[a] witness may testify to the value of the witness's own property or services."

Rule 701(b) codifies the long-standing principle that "the law presumes an owner knows the value of his property because of his interest in the land." *Brown v. Brown*, 577 S.W.3d 206, 213 (Tenn. Ct. App. 2018). However, to establish property value through a lay-owner's opinion, "[t]here must be some evidence, apart from mere ownership, that this 'value' is **a product of reasoned analysis**." *Airline Const. Inc. v. Barr*, 807 S.W.2d 247, 256 (Tenn. Ct. App. 1990) (emphasis added). In other words, "an owner's opinion as to the value of his property 'must be founded upon evidence in the record, rather than upon conjecture, speculation or unwarranted assumptions.'" *Id*. (quoting *Snowbank Enterprises, Inc. v. United States*, 6 Cl. Ct. 476 (1984)); *see Angelo*, 1990 WL 513304, at *1 (holding that plaintiff "failed to prove by satisfactory evidence that he [was] 'specially damaged' by the non-conforming use of the adjacent property" when he testified that the non-conforming use "devalued" his property but "offered no evidence as to economic factors"). "An owner's opinion regarding valuation cannot be given **any weight** where . . . it is clear that the owner's testimony is founded on **pure speculation**." *Sikora v. Vanderploeg*, 212 S.W.3d 277, 284 (Tenn. Ct. App. 2006) (citations omitted) (emphasis added).

During his deposition, Levy admitted that he pulled the $50,000 figure out of "thin air":

- 10 -

Q. . . . [D]o you have an opinion today as to what your property was worth the day before this fence was built and what it was worth thereafter?

A. I would say it diminished the property's value by $50,000.

Q. And you sort of shook your head and you shook your hands when you said that. Why did you do that? To be frank with you, my interpretation of that body language was that you just pulled that out of thin air. So if you didn't, I need to know why.

A. **I did pull it out of thin air.**

Q. Okay.

A. Trying to weigh and imagine putting it on the market, and, as you stated, it was "X," and it's "Y," that's my opinion off the cuff.

Q. And what was the gross number before? And then if we subtract 50,000, we could figure out what the net number is. What was the gross number, pre-diminution in value number? Was it a hundred thousand? A million?

A. **I don't know**.

(Emphasis added).

And in his supplementary affidavit, Levy stated that the fence's nonconforming aspects diminished his property value by "a minimum of 5%" because the fence blocked his view, gave the appearance that it was his, and increased the cost of landscaping:

13. It is my opinion, and is not speculation, now that I have been given a proper opportunity to do so, that the Fence Violations have and will result in a diminution in value of my property. There is an absolute loss of the scenic views that existed prior to the construction of the Fence. The Fence Violations interfere with these views.

14. The Fence's configuration, which violates the Fence Laws, also has a direct impact on my use and enjoyment of my property as it gives the appearance that I own the Fence. This has also diminished the value of my property. . . .

. . . .

18. Even if those portions of the Fence that are now on my property were moved to NOT trespass/encroach, but the Fence Violations remained in place, I would still be specially damaged in that I would (as I plan to) spend

- 11 -

substantial monies to landscape around the Fence so that I would not have to see the Fence or be threatened by its potential nefarious uses. It will be more costly to put such landscaping into place and maintain a 4 foot fence (or a fence that is in effect over 6 feet) than a 3 foot fence.

. . .

20. Now that I have been given the opportunity to do so, based on all of the factors as set out in this affidavit, I can state with certainty, and it is my opinion, that I have been specially damaged by the Fence Violations, which have diminished my property and reduced the potential resale value of my property. It is my opinion that my property has been diminished/reduced by a minimum of 5% based solely on the Fence Violations.

We conclude that neither Levy's deposition testimony nor his supplementary affidavit is capable of creating a genuine issue as to whether he was specially damaged by the fence's allegedly nonconforming height and orientation due to a loss in property value. While Levy's opinion on value might be **admissible** under Tennessee Rule of Evidence 701, Levy failed to produce evidence showing that his opinion was the "product of reasoned analysis." *See Angelo*, 1990 WL 513304, at *1 (holding that plaintiff "failed to prove by satisfactory evidence that he [was] 'specially damaged' by the non-conforming use of the adjacent property" when he testified that the use "devalued" his property but "offered no evidence as to economic factors"). Thus, no reasonable jury could rule in Levy's favor on this issue. *See Pandharipande*, 679 S.W.3d at 618 (stating that "the evidence produced at the summary judgment stage" must be "such that a reasonable jury could return a verdict for the nonmoving party" (quoting *Rye*, 477 S.W.3d at 251)). We are also not persuaded by Levy's assertion that he produced evidence of special damages by making the conclusory statement that the fence's 12 to 18 inches in excess, non-conforming height would increase the cost of landscaping.

Based on the foregoing, we find that Levy failed to establish a genuine issue of material fact on whether he was "specially damaged" by the fence due to a decrease in his property value. Accordingly, we affirm the trial court's dismissal of this claim.

## II. USE-ORDINANCE, NUISANCE, AND IIED CLAIMS

The trial court dismissed Levy's use-ordinance, nuisance, and IIED claims under Tennessee Rule of Civil Procedure 41.02, which provides:

After the plaintiff in an action tried by the court without a jury has completed the presentation of plaintiffs evidence, the defendant, without waiving the right to offer evidence in the event the motion is not granted, may move for dismissal on the ground that upon the facts and the law the plaintiff has

shown no right to relief. The court shall reserve ruling until all parties alleging fault against any other party have presented their respective proof-in-chief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court grants the motion for involuntary dismissal, the court shall find the facts specially and shall state separately its conclusions of law and direct the entry of the appropriate judgment.

(Emphasis added).

When considering a motion to dismiss under Rule 41.02(2), the trial court must "impartially weigh and evaluate the evidence just as it would after all the parties had presented their evidence." *Shore v. Maple Lane Farms, LLC*, 411 S.W.3d 405, 413 (Tenn. 2013). When reviewing a trial court's decision to grant a motion under Rule 41.02(2), "we must review the record de novo, presuming that the trial court's factual findings are correct unless the evidence preponderates otherwise." *Shore*, 411 S.W.3d at 413. But "[w]e review a trial court's resolution of legal issues without employing a presumption of correctness, and we reach our own independent conclusions." *Id.* Thus, "the reviewing court must affirm the trial court's decision unless the evidence preponderates against the trial court's factual determinations or the trial court's decision is based on an error of law that affects the outcome of the case." *Id.*

## A. Accessory-Use Claim

Levy contends that the evidence preponderates against the trial court's finding that Defendants were not operating a construction company on their property in violation of the FZO's accessory-use regulations. But as an initial matter, Levy asserts that the trial court should have taken judicial notice of the applicable FZO regulation at trial.[10]

Decisions to take judicial notice are generally within the discretion of the trial court, *see Montepeque*, 2010 WL 3025541, at *9, and discretionary decisions are reviewed under the "abuse of discretion" standard of review, *see Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010). Under this standard, "courts will not second-guess a trial court's exercise of its discretion simply because the trial court chose an alternative that the

---

[10] Levy also argues that the trial court should have admitted the documents into evidence under Rule 803(8) and 902 of the Tennessee Rules of Evidence. But the trial transcript reveals that Levy's trial counsel never asked the court to admit the certified copies of the ordinance into evidence under Rule 803. Accordingly, we decline to address whether the documents were admissible under Rules 803 and 902 on the grounds of waiver.

appellate courts would not have chosen." *Harmon*, 594 S.W.3d at 306 (quoting *State v. McCaleb*, 582 S.W.3d 179, 186 (Tenn. 2019)).

Prior to 1990, courts were unable to take any judicial notice of municipal ordinances. *See 411 P'ship v. Knox Cnty.*, 372 S.W.3d 582, 587 (Tenn. Ct. App. 2011). "In cases involving such ordinances it was necessary for the parties to stipulate the existence and the accurate texts of ordinances or else to prove the same through municipal officials or by supplying certified copies in accordance with the Tennessee Rules of Civil Procedure."[11] *Id.* at 587–88 (citing *Metro. Gov't of Nashville & Davidson Cnty. v. Shacklett*, 554 S.W.2d 601, 605 (Tenn. 1977)). Post-1990, parties have a fourth option—judicial notice—under Tennessee Rule of Evidence 202(b). *See id.* That rule provides:

> Upon reasonable notice to adverse parties, a party may request that the court take, and the court may take, judicial notice of (1) all other duly adopted federal and state rules of court, (2) all duly published regulations of federal and state agencies and proclamations of the Tennessee Wildlife Resources Agency, (3) **all duly enacted ordinances of municipalities or other governmental subdivisions**, (4) any matter of law which would fall within the scope of this subsection or subsection (a) of this rule but for the fact that it has been replaced, superseded, or otherwise rendered no longer in force, and (5) treaties, conventions, the laws of foreign countries, international law, and maritime law.

Tenn. R. Evid. 202(b) (emphasis added).

If a court takes judicial notice of an ordinance, the ordinance need not be proved. *See Est. of Hawk v. Chambliss, Bahner & Stophel P.C.*, No. E2022-01420-COA-R3-CV, 2024 WL 3590812, at *8 (Tenn. Ct. App. July 31, 2024) ("[J]ust because a court takes judicial notice of the law, the court is not required to admit that law into evidence." (quoting *Latiff v. Dobbs*, No. E2006-02395-COA-R3-CV, 2008 WL 238444, at *6 (Tenn. Ct. App. Jan. 29, 2008)); *see also* Tenn. R. Evid. 201, cmt. ("Judicial notice really does not involve admission and exclusion of evidence; rather, no evidence is necessary."). On the other hand, if the ordinance is proved, the court need not take judicial notice. *See King v. Alcohol Comm'n of City of Memphis*, 1993 WL 310456, at *4 (Tenn. Ct. App. Aug. 16, 1993)

---

[11] "Proving" an ordinance through the testimony of a municipal official still requires the party to submit a copy of the ordinance. *See Akins v. City of Fairview*, No. 01-A-019108CH00299, 1992 WL 1399, at *2 (Tenn. Ct. App. Jan. 8, 1992) (holding affidavit of city recorder "as to what is in the records" was "not competent evidence of the contents of the ordinances of the City").

(holding that "the trial judge was not required to take judicial notice of the ordinances in order to consider them" because the record contained an admissible copy).

On the first day of trial in June 2021, Levy tried to introduce a document that purportedly contained an FZO regulation related to road construction.[12] But Defendants objected because the document was not certified and, therefore, was not a self-authenticating public record. *See* Tenn. R. Evid. 902. Levy's counsel offered no argument in rebuttal, and the trial court sustained the objection.

Four months later, during Franks' testimony in October 2021, Levy's counsel again tried to introduce a document that purportedly contained an FZO regulation that prohibited the "operation" of a construction company on residential property. But as before, Defendants objected because the document was not certified. This time, Levy's counsel responded to the objection by revealing seven documents but none of them had been listed on Levy's pretrial exhibit list or provided to Defendants before trial.[13] Nevertheless, each contained a portion of the FZO's accessory-use regulations, and each was certified by the Assistant City Recorder of the City of Franklin, Tennessee. Levy's counsel said that the documents showed that the regulation was changed several times between 2016 and the time of trial but that the regulation's requirements had remained the same in all material respects. Levy's counsel then asked for judicial notice of the regulations under Tennessee Rule of Evidence 202(b).[14]

But the trial court denied Levy's motion, reasoning that he had not provided "reasonable notice" to Defendants as required by Rule 202(b). Nonetheless, the court

---

[12] Levy's second and third amended complaints included an allegation that Defendants had failed to obtain a permit to construct the access road beside Levy's house. That matter is not at issue on appeal.

[13] In the trial court, Levy argued that municipal ordinances are like state statutes and that no request for judicial notice was necessary. The trial court correctly disagreed. Rule 202 states that trial courts **must** take judicial notice of statutes, Tenn. R. Evid. 202(a), and **may** take notice of municipal ordinances—but only if requested to do so by a party and only "[u]pon reasonable notice to adverse parties," Tenn. R. Evid. 202(b); *see also Williams v. Epperson*, 607 S.W.3d 289, 298 (Tenn. Ct. App. 2020) (contrasting ordinances with statutes under Rule 202).

[14] In his appellate brief, Levy argues that the trial court should have admitted the certified documents into evidence under Rules 803(8) and 902. But the trial transcript reveals that Levy's trial counsel never asked the court to admit the certified copies of the accessory-use regulation into evidence under Rule 803. Tennessee Rule of Evidence 103 states, "Error may not be predicated upon a ruling which . . . excludes evidence unless a substantial right of the party is affected, and . . . the substance of the evidence and the specific evidentiary basis supporting admission were made known to the court by offer or were apparent from the context." Accordingly, we decline to address whether the documents were admissible under Rules 803 and 902.

- 15 -

allowed Levy to enter the certified documents into evidence as Exhibit 120 for identification purposes only.

On appeal, Levy argues that he provided "reasonable notice" by submitting a page from the FZO with his summary judgment response:

> Here, Mr. Levy filed a memorandum of law opposing the defendants' motions for summary judgment on April 22, 2021. The Franklin City Zoning Ordinances were discussed in that memorandum. Attached as a portion of Exhibit 6 to the memorandum was "Page 4-6" of the Franklin City Zoning Ordinance, which listed examples of the "types of uses allowable as a home occupation" and included on its list: "Contractor (office only)." This *exact same page* was included within the Franklin City Zoning Ordinance that Mr. Levy sought to introduce at trial. Surely, Mr. Levy cannot be said to have failed to give reasonable notice when he filed the exact page of the ordinance at issue with his summary judgment brief more than six months prior to attempting to introduce it at trial.

(Citations omitted) (emphasis in original).

Because Rule 202 "does not specify what constitutes 'reasonable notice,' it is left to the sound discretion of the trial judge to ascertain whether the reasonable notice criterion has been satisfied under the particular circumstances of the case." *Montepeque*, 2010 WL 3025541, at *9. Under the particular circumstances of this case, we conclude that the trial court did not err by declining Levy's request for judicial notice of the FZO section that formed the basis for his accessory-use claim.[15]

---

[15] We observe that the certified documents in Exhibit 120 contain only a portion of the FZO chapter at issue. Although Levy has referred to the individual FZO regulations as "ordinances," there is only one ordinance at issue: the FZO. As with any action founded upon compliance with written rules and regulations, context is key, and the devil is often in the details. *See Thacker v. City of Greeneville*, No. E2020-01106-COA-R3-CV, 2021 WL 3124309, at *8 (Tenn. Ct. App. July 23, 2021) (holding that meaningful appellate review was not possible when the record did not contain a complete copy of the administrative policy at issue, which was "part of a larger document"); *Clayborne v. Toshiba Am., Inc.*, No. 01A01-9406-CH-00242, 1995 WL 70611, at *3 (Tenn. Ct. App. Feb. 22, 1995) (holding that party did not prove neighbor's conduct violated a zoning ordinance when "the applicable zoning ordinance [was] not in the record and there [was] no other proof showing what uses were allowed under the county agricultural classification"); *Cf. Smith v. Amerisure Ins. Co.*, No. 03A01-9406-CV-00223, 1994 WL 679066, at *1 (Tenn. Ct. App. Dec. 5, 1994) (holding that review was impossible without a complete copy of the insurance policy). "Courts do not read ordinances or statutes 'in isolation and are required to construe them "as a whole, read them in conjunction with their surrounding parts, and view them consistently with the legislative purpose."'" *City of Memphis v. Pritchard*, No. W2019-01557-COA-R3-CV, 2020 WL 4354911, at *7 (Tenn. Ct. App. July 29, 2020) (citations omitted) (quoting *Griffin v. Campbell Clinic, P.A.*, 439 S.W.3d 899, 903 (Tenn. 2014)).

By the time that Levy asked for judicial notice, his accessory-use claim had been pending for five years. At trial in October 2021, Levy's counsel admitted that he obtained the certified copies after the conclusion of the June trial dates because Defendants had already objected to the introduction of an uncertified copy of the FZO. Nonetheless, he waited until after trial had resumed—four months later—to reveal the documents.

Given these circumstances, we conclude that the trial court's denial of Levy's motion for judicial notice was within the range of acceptable alternatives and was not an abuse of discretion. *See Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 525 (Tenn. 2010). Moreover, "[t]his court is not required to grant relief to a party 'responsible for an error, or who failed to take whatever action was reasonably available to nullify the effect of an error.'" *Kittrell v. Wilson Cnty.*, No. M2010-00792-COA-R3-CV, 2011 WL 3339132, at *5 (Tenn. Ct. App. Aug. 3, 2011) (quoting Tenn. R. App. P. 36(a)).

Still, Levy argues that "[t]he failure by the trial court to admit the City Ordinance prohibiting the operation of construction companies on residential property is not fatal to Mr. Levy's construction ordinance claim" because Franks "admitted that while there is a City Ordinance that may allow him to have an office for a construction company on his residential property, the Ordinance forbids him from operating a construction company from that same property, saying 'no equipment' or 'heavy stuff' is allowed." This argument is wholly without merit.

As discussed, the content of an ordinance must be established by stipulation, certification, presentation, or judicial notice. *See*, *supra*, § I. And even if Franks could "admit" to the FZO's requirements, his "admission" was so vague that no court could rely on it to reach a reasoned conclusion as to Defendants' compliance. As paraphrased by Levy, Franks' testimony would only show that "a City Ordinance" allows Franks "to have an office for a construction company on residential property" and that the same ordinance prohibits "operating a construction company" on the Trust's property.

We also note that Levy's initial appellate brief cites no authority on this issue. Instead, Levy waited until he filed his reply brief to give a complete argument on the FZO's requirements and their application to the evidence presented at trial. "A skeletal argument that is really nothing more than an assertion will not properly preserve a claim." *Newcomb v. Kohler Co.*, 222 S.W.3d 368, 400 (Tenn. Ct. App. 2006). Accordingly, "where a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived." *Sneed v. Bd. of Pro. Resp. of Supreme Ct.*, 301 S.W.3d 603, 615 (Tenn. 2010). Further, it is settled that raising new arguments in a reply brief is "fundamentally unfair" to the appellee and, therefore, such arguments will be considered waived. *See Hughes v. Tennessee Bd. of Prob. & Parole*, 514 S.W.3d 707, 724 (Tenn. 2017) ("We also note that petitioner only asserts and briefs this claim in his reply brief. . . . . Therefore, petitioner's argument . . . is waived"); *Caruthers v. State*, 814 S.W.2d 64, 69 (Tenn. Crim. App. 1991) (observing that letting an appellant include a new

argument in a reply brief "would be fundamentally unfair as the appellee may not respond to a reply brief").

For these reasons, we conclude that Levy is not entitled to relief from the dismissal of his accessory-use claim.

## B.  Nuisance Claims

In his complaint, as amended, Levy asserted a claim for "Nuisance and Request for Declaration of a Spite Fence." The trial court treated this claim as two: one for private nuisance and the other for declaration of a "spite fence."

### 1. Spite Fence Claim

A "spite fence" has been defined as one built purely to harass or annoy a neighbor. *See* 1 Am. Jur. 2d Adjoining Landowners § 102 (defining "spite fence" as "one which is of no beneficial use or pleasure to the owner but was erected and is maintained for the purpose of annoying a neighbor or with the malicious motive of injuring the neighbor by shutting out the neighbor's light, air, and view" (footnotes omitted)). Spite fence claims are analyzed under the law of nuisance. *See id.* § 104.

To prove a nuisance claim in Tennessee, a plaintiff must produce evidence that the defendant's conduct was a "substantial" and "unreasonable" invasion of the plaintiff's interest in the use and enjoyment of his property. *Shore v. Maple Lane Farms, LLC*, 411 S.W.3d 405, 425 (Tenn. 2013). A "spite fence" is unreasonable per se because the purpose of harassing one's neighbor "has no utility that the law will recognize." Restatement (Second) of Torts § 829, cmt. c (1979).[16]

Thus, to show that the Trust's new fence was an "unreasonable invasion" of his interest in the use and enjoyment of his property under the spite fence doctrine, Levy had to prove that Defendants built the fence to harass him.[17] Levy also had to prove that the invasion of his use and enjoyment was "substantial." *See Shore*, 411 S.W.3d at 425.

---

[16] We note that no Tennessee appellate court has recognized a cause of action for "Spite Fence" nor articulated what constitutes a "spite fence." That said, Tennessee courts have frequently cited the Restatement (Second) of Torts when addressing nuisance claims. *See, e.g., Lane v. W.J. Curry & Sons*, 92 S.W.3d 355, 364–65 (Tenn. 2002) (citing Restatement (Second) of Torts § 821D (1979)).

[17] Some courts have held that the alleged spite fence must be built for the **sole** purpose of harassing the neighbor. *See* 1 Am. Jur. 2d Adjoining Landowners § 106. Because we have disposed of Levy's claim on other grounds, we need not address whether Tennessee would follow this rule.

The trial court found that "[t]he only credible evidence about Franks' intentions was from Franks," explaining:

> Franks testified that his wife had grown up on a farm with similar fencing and had asked Franks for many years to erect the fence around the property. Also, Levy admitted that he was aware that the Franks had planned many years ago to fence their property. Finally, Franks testified that he did not erect the fence to harass, bother, or be unkind to Levy or to devalue Levy's property. The Court found Franks to be credible on this issue.

Regarding live, in-court witnesses, appellate courts afford trial courts considerable deference when reviewing factual findings based on credibility determinations because trial courts are "uniquely positioned to observe the demeanor and conduct of witnesses." *Kelly v. Kelly*, 445 S.W.3d 685, 692 (Tenn. 2014) (quoting *State v. Binette*, 33 S.W.3d 215, 217 (Tenn. 2000)). "[A]ppellate courts will not re-evaluate a trial judge's assessment of witness credibility absent clear and convincing evidence to the contrary." *Id.* (quoting *Wells v. Tennessee Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999)) (alteration in original).

On appeal, Levy argues, "The timing of the encroaching asphalt being partially removed coincided exactly with the start of the new fence construction, and demonstrates Mr. Franks' spitefulness towards Mr. Levy." We conclude this circumstantial evidence is not enough to justify a reversal of the trial court's credibility finding.

For this reason, we affirm the trial court's dismissal of Levy's "spite fence" claim.

### 2. Nuisance

Levy contends that the evidence preponderates against the trial court's finding that Defendants' fence was not a nuisance. He alleges that the fence interfered with his use and enjoyment of his property because (1) the fence creates a safety hazard at the entrance to his driveway; (2) the fence obstructs his view; and (3) the fence provides no benefit to the Franks.

As we have recognized, "[N]uisance liability attaches to conduct that is a legal cause of an invasion of another's interest in the use and enjoyment of land, where the invasion is substantial and unreasonable." *Shore v. Maple Lane Farms, LLC*, 411 S.W.3d 405, 425 (Tenn. 2013) (quoting *Prosser & Keeton* § 87, at 622–23). "Whether an activity or use of property amounts to an unreasonable invasion of another's legally protected interests 'depends on the circumstances of each case, such as the character of the surroundings, the nature, utility, and social value of the use, and the nature and extent of the harm involved.'" *Id*. at 415–16 (quoting *Lane*, 92 S.W.3d at 364–65). And whether the invasion is substantial or "significant" depends on "its effect upon persons of ordinary health or sensibilities, and ordinary modes of living, and not upon those who, on the one hand, are morbid or fastidious or peculiarly susceptible to the thing complained of, or, on the other hand, are unusually

insensible thereto." *Jenkins v. CSX Transp., Inc.*, 906 S.W.2d 460, 462 (Tenn. Ct. App. 1995) (quoting *Johnson v. Cowden*, 5 Tenn.Civ.App. 1, 7 (1914)); *accord Shore v. Maple Lane Farms, LLC*, 411 S.W.3d 405, 416 (Tenn. 2013). In other words, "There is liability for a nuisance only to those to whom it causes significant harm, of a kind that would be suffered by a normal person in the community or by property in normal condition and used for a normal purpose." *Jenkins*, 906 S.W.2d at 462 (quoting Restatement (Second) of Torts § 821F (1979)).

The trial court found that Levy is "hypersensitive" and that "the fence does not interfere with Levy's use of his property." As for the entrance to Levy's driveway, the court found that "trucks and other heavy equipment are able to access the Levy property with no problem," as they did when Levy completed "a five year, one-million-dollar remodel on his home." The court also noted evidence that Levy was "able to receive deliveries every weekday from FedEx and UPS for his business and the fence has not caused a problem." As to the fence's purpose, the court found that Franks built the fence as part of a plan to fence in the "entire property"—a project he undertook because Mrs. Franks grew up with a similar fence and wanted it for her enjoyment of the Trust's property.

On appeal, Levy contends that the evidence showed that the fence created a safety hazard at the entrance to his driveway because "two delivery trucks delivering packages hit the fence during delivery." But he does not dispute the trial court's finding that "trucks and other heavy equipment [were] able to access the Levy property with no problem" during Levy's five-year renovation.

Levy also contends that the fence obstructs his view. But "[i]n the absence of statute or contract, the general rule is that a landowner may, by building on his own land, deprive the adjoining owner of the view which he had before the structure was erected without subjecting himself to legal liability." *Mountain Valley Properties, Inc. v. River Pres. Owners' Ass'n*, No. E2010-01728-COA-R3-CV, 2011 WL 2416729, at *11 (Tenn. Ct. App. June 13, 2011) (citing *S. Advert. Co., Inc. v. Sherman*, 308 S.W.2d 491, 494 (Tenn. Ct. App. 1957)). And as we have discussed, Levy's own photographs showed that his "view" was already blocked by several trees and other foliage on the Trust's property.

Still, Levy asserts that the fence served "no benefit to the Franks property." We construe this argument as going to whether the fence was "an unreasonable invasion." *See Shore v. Maple Lane Farms, LLC*, 411 S.W.3d 405, 425 (Tenn. 2013). Levy cites his own trial testimony, in which he stated that the entrance to his driveway is "about 300 feet" or "[a]pproximately a football field away" from Franks' house, and Trial Exhibit 34, which

is an aerial photograph of the properties.[18] Thus, Levy's argument is based on only the fact that the section of fence in front of his house is several hundred feet from the Franks' house. Notably, Levy makes no legal or factual argument to rebut the court's finding that the fence was part of a larger project to beautify the Trust's property. We do not find the distance from Franks' house to the portion of fencing in front of Levy's house to be evidence that the fence served no useful purpose.

The trial court held that Levy did not submit "credible evidence that the green, wooden, four-planked fence here substantially or unreasonably interferes with the use and enjoyment of his property," reasoning that, "[w]hile the fence may offend Levy, under Tennessee law, it does not rise to the level of an offensive or inconvenient interference for a 'normal person.'" Based on the foregoing, we conclude that Levy has not shown that this holding was error. Accordingly, we affirm the trial court's dismissal of Levy's nuisance claim.

## C. Intentional Infliction of Emotional Distress[19]

In Tennessee, there are three essential elements to a cause of action for IIED: "(1) the conduct complained of must be intentional or reckless; (2) the conduct must be so outrageous that it is not tolerated by civilized society; and (3) the conduct complained of must result in serious mental injury." *Bain v. Wells*, 936 S.W.2d 618 (Tenn. 1997).[20]

The trial court found that Levy failed to prove two of the three essential elements of his IIED claim, that Defendants' acts were intentional or caused serious mental injury. We begin our discussion of the IIED issue focusing on the element of intent.

---

[18] Levy also cites his testimony that the fence did not "serve any useful purpose" to **Levy**. It is unclear how this fact supports Levy's argument that the fence did not serve any useful purpose to **Defendants**.

[19] Levy's complaint asserted a claim for "Outrageous Conduct." We note that "[i]ntentional infliction of emotional distress and outrageous conduct are different names for the same cause of action." *Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 204 (Tenn. 2012). "Because having two names for the same tort—'intentional infliction of emotional distress' and 'outrageous conduct'—engenders potential confusion and misunderstanding and may lead to error, courts and litigants should no longer refer to 'outrageous conduct' as a separate, independent cause of action, nor as a synonym for the tort of intentional infliction of emotional distress." *Id*. at 205.

[20] Levy also contends that the trial court erred by finding that Levy's IIED claim was barred by the one-year statute of limitations in Tennessee Code Annotated § 28-3-104(a)(1). Because we have affirmed the trial court on other grounds, we pretermit Levy's statute of limitations argument.

Levy argues that he produced evidence that Franks "intentionally and recklessly" caused Levy serious mental injury by (1) building "another spite fence"; (2) restarting the "operation of a construction company'"; (3) paving over part of Levy's property; (4) narrowing the entrance to Levy's driveway; and (5) making "new baseless claims of threats of [sic] trespass."[21] Levy asserts these acts were part of an intentional course of conduct that was outrageous when viewed in light of Franks' prior bad acts that were at issue in *Levy I*.[22]

As for the "spite fence" allegation, we have already addressed and rejected Levy's arguments on this matter. The trial court found that Franks installed the fence as part of a larger project on the Trust's property—not as an effort to harass Levy. The court's finding was based on a credibility determination, and Levy has not pointed to evidence that clearly and convincingly shows that the determination was an error. *See Kelly*, 445 S.W.3d at 692 (quoting *Wells*, 9 S.W.3d at 783). With regard to safety, Levy has not disputed that trucks and heavy equipment entered and exited his property without incident during the renovation of his home.

And regarding construction traffic, we find Levy has waived his argument by not including any citations to the record. In his appellate brief, Levy contends that Franks "continued to operate his construction business in a way that disturbed Mr. Levy's use of his property," and he represents that the trial court in *Levy I* found "this exact same misconduct amounted to outrageous conduct." But Levy does not point us to any place in the record where this assertion is borne out. To the contrary, on appeal in *Levy I*, we held that Franks' "outrageous" conduct was a response to Levy's campaign to stop Franks' use of his property for an office and storage. *See Levy I*, 159 S.W.3d at 84 (holding that Franks' "entire course of conduct" was calculated "to suppress Plaintiff's opposition to the Franks' use of their property as a staging ground for their construction business, by intimidating the Levys into either submitting meekly or selling their home."). In other words, Franks' business activities predated his outrageous conduct, which came only after Levy began "incessantly documenting and videotaping the defendants' activities." *Id*. at 69. Levy makes no other legal argument to rebut the trial court's finding that he failed to prove "the Defendants' intended purpose for the continued use of the trucks and heavy equipment [was] to cause Levy emotional distress."

---

[21] Levy suggests that Franks' course of conduct since 2013 also included "gunshots," "a Federal Express package mis-delivery that disappeared," and "[a] vehicular incident where Mr. Franks threatened the Levys." But Levy has not developed an argument concerning these allegations—which were rejected by the trial court—nor has Levy cited to the record to show evidence of these allegations.

[22] At several points in his brief, Levy contends that Defendants' conduct was "intentional and reckless," but Levy develops no legal argument as to how Defendants acted "recklessly." The gravamen of Levy's allegations is that Franks acted intentionally.

Levy also asserts that the paving over of a corner his property was part of Defendants' continuing course of conduct designed to inflict emotional distress. The trial court, however, held that Franks did not intentionally or recklessly cause the encroachment. Instead, the court found that the misplaced pavement was due to a mistake by a third-party paving company. Levy's appellate brief develops no legal argument to establish error in this regard.

Finally, Levy contends that Franks caused the Trust to file a bad-faith counterclaim for trespass against Levy and Mrs. Levy. In his brief, Levy argues:

> The fact that Mr. Franks made another false allegation of trespass against Mr. Levy in the second lawsuit, and kept it alive for over 4 years before finally dismissing it, shows that (1) even Mr. Franks knew it was false by his ultimate dismissal of his own claims and (2) it was filed maliciously so it would hang over Mr. Levy's head as a reminder of the previous false allegations. The fact that Mr. Franks doubled down on this outrageous action by also falsely and maliciously alleging trespass against Mrs. Levy, and then eventually nonsuiting that claim as well, shows that it was filed by Mr. Franks in bad faith.

Finding this assertion merely conclusory and unsupported by citations to the record or authority, we decline the opportunity to infer that Franks filed his claim in bad faith simply because he took a voluntary nonsuit after allowing the claim to "hang over Mr. Levy's head as a reminder."[23]

For these reasons, we affirm the trial court's dismissal of Levy's IIED claim.

### III. PERMANENT INJUNCTION

Levy contends that the trial court erred in granting a permanent injunction barring Levy from interfering with the Trust's plan to move its electrical lines underground. We agree.[24]

---

[23] In *Levy I*, Franks was held liable for malicious prosecution based on a warrant that he had taken out for criminal trespass. We decline to infer from this fact that the Trust's counterclaim for **civil** trespass in this action was also malicious.

[24] In their appellate briefs, Defendants do not defend the trial court's entry of the injunction; rather, they assert that any error was harmless because it "had no impact on the final disposition of Mr. Levy's claims." Defendants misapprehend the issue on appeal. Levy has not claimed that the injunction played any role in the court's dismissal of his claims.

The Trust filed its motion under Tennessee Rule of Civil Procedure 65.04(2), which provides:

> A temporary injunction may be granted **during the pendency of an action** if it is clearly shown by verified complaint, affidavit or other evidence that the movant's rights are being or will be violated by an adverse party and the movant will suffer immediate and irreparable injury, loss or damage **pending a final judgment in the action**, or that the acts or omissions of the adverse party will **tend to render such final judgment ineffectual**.

(Emphasis added). Thus, Rule 65.04 applies to requests for injunctive relief related to the underlying action. *See Smith Mech. Contractors, Inc. v. Premier Hotel Dev. Grp.*, 210 S.W.3d 557, 565 (Tenn. Ct. App. 2006) ("[W]hen a party is seeking injunctive relief, that party should bring one action containing both the request for injunctive relief as well as the underlying cause of action.").

Here, the Trust sought an injunction to prevent Levy from interfering with its installation of underground powerlines. The Trust concedes on appeal that "the request for injunctive relief was a satellite claim" and "had nothing to do with Levy's various claims." Still, the Trust concludes that "the trial judge had discretion under Rule 65, T.R.C.P., to adjudicate the claim for injunctive relief, given that it involved the same parties and the same driveway involved in the Levy lawsuit." The Trust, however, has provided no legal support for this proposition.

"Courts can only act upon such matters as are properly brought before them by the parties." *Finch v. Raymer*, No. W2012-00974-COA-R3CV, 2013 WL 1896323, at *15 (Tenn. Ct. App. May 6, 2013) (citing *Randolph v. Merch.'s Nat. Bank of Memphis*, 77 Tenn. 63, 68 (1882)). "Orders issued by a court without jurisdiction are void, and we are under an affirmative duty to vacate void orders without reaching the merits of the issues on appeal." *Hodge,* 2007 WL 3202769, at *2 (citing Tenn. R. App. P. 13(b); *First Am. Tr. Co. v. Franklin-Murray Dev. Co., L.P.*, 59 S.W.3d 135, 141 (Tenn. Ct. App. 2001)). Accordingly, we vacate the trial court's order enjoining Levy from "interfering" with the Trust's installation of underground power lines.

IV. CIVIL CONSPIRACY, PUNITIVE DAMAGES, AND DISCRETIONARY COSTS

Because we have affirmed the trial court's dismissal of Levy's underlying claims, we pretermit Levy's request for reinstatement of his claim for civil conspiracy and his request for punitive damages. *See, e.g.*, *Watson's Carpet & Floor Coverings, Inc. v. McCormick*, 247 S.W.3d 169, 186 (Tenn. Ct. App. 2007) ("Civil conspiracy requires an underlying predicate tort allegedly committed pursuant to the conspiracy." (citation omitted)). Further, we conclude that Levy is not entitled to a reversal of the award of discretionary costs because Defendants remain the prevailing parties under Tennessee Rule of Civil Procedure 54.04.

## CONCLUSION

For the foregoing reasons, we vacate the trial court's injunction order but affirm its dismissal of Levy's claims. This matter is remanded with costs of appeal assessed against the appellant, Howard Levy.

_____
FRANK G. CLEMENT JR., P.J., M.S.